[S. F. No. 1516.  Department Two. — July 27, 1901.

REBECCA A. RAWLINS, Respondent, v. J. W. FERGU-SON et al., Appellants.

PROMISSORY NOTE — EVIDENCE — MORTGAGE. — A finding that the promissory note sued upon in this action had never been secured by a mortgage, and that consequently an action of foreclosure was not necessary for its enforcement, held sustained by the evidence.

APPEAL from a judgment of the Superior Court of Fresno County and from an order refusing a new trial.  E. W. Risley, Judge.

The facts are stated in the opinion of the court.

George E. Church, for Appellants.

H. H. Welsh, and Stanton L. Carter, for Respondent.

TEMPLE, J. — This is an action upon a promissory note, brought the day before it would have been barred by the statute of limitations.  The defense attempted is in the nature of a plea in abatement, that the note was secured by a mortgage, and only a suit to foreclose such mortgage can be maintained.

The pleadings are verified, and the amended answer makes no denial sufficient to throw the burden of proof upon the plaintiff, except as to the allegation that two hundred dollars is a reasonable fee for plaintiff's attorney.  In regard to that no question is made here.

The objection is made here that the affirmative defense is also insufficiently pleaded, and would have been held bad on demurrer.  The objection is well founded as matter of law, but cannot avail respondent.  There was an attempt to plead such defense, and the pleading was sufficient to enable plaintiff to understand the issue which defendants were endeavoring to make.  Upon this, plaintiff went to trial, without having objected by demurrer or otherwise.  She will not now be heard to say that there was no such issue to try.

The court found very fully, upon this matter, in favor of plaintiff, that the debt was not, and never had been, secured in any mode.  This finding is attacked, and it is contended

that the affirmative of the issue was established without conflict. This is the only question of importance in the case.

The loan was made by plaintiff, through her agent, Jackson, who was also her attorney. The money was derived from an insurance upon her husband's life, and after her husband's death was collected from the insurance company, by Jackson, as her attorney. She authorized him to lend it for her, directing him to consult her about proposed loans, and to take security on first mortgages. December 9, 1891, he made this loan for her to defendant Ferguson, of two thousand dollars, taking his note, payable to plaintiff, and signed by all the defendants. The note, by its terms, was due four months after date. It was not secured by mortgage or otherwise, except that the three defendants, other than Ferguson, were in fact sureties. This suit was brought April 8, 1896, by Jackson, as attorney for plaintiff. Jackson also verified the complaint, and at the same time sued out a writ of attachment, to obtain which he, in person, made the statutory affidavit, which contained this language, referring to the note sued upon: "and that such contract was made and is payable in this state, and that the payment of the same has not been secured by any mortgage or lien upon real or personal property." Soon after this suit was brought, differences arose between plaintiff and her said attorney. She not only dismissed him as her attorney, but caused a criminal prosecution to be commenced against him.

After this an amended answer was filed in this case, and upon some incidental proceeding afterward the said attorney made an affidavit, to be used against plaintiff, in which he swore that he made the loan to Ferguson, as agent of the plaintiff, and that "subsequently, at my express instance and request, as such agent, the said defendant J. W. Ferguson, as further security for said loan, executed to said Sarah F. Jackson, my wife, deeds," etc.

At the trial the deeds were in evidence. One was dated November 11, 1892, and the other November 28, 1892. The deeds were absolute conveyances, running to Sarah F. Jackson, as grantee.

Mr. Jackson was the principal witness for the defense. Part of his testimony was as follows: "I accepted the note, and some time after the note was due, I knew at the time, Mr. Ferguson came and said he wanted to further secure the note,

wanted to deed me some two other properties, and he executed a deed to my wife." "There was no definite extension of time of payment, as far as I remember, when the deeds were made. Mr. Ferguson came and stated his desire to further secure the payment of that note by the transfer of certain properties. That was done. I don't know that it was because he could n't pay it. I don't think any demand had been made upon him for the payment at all. The note was just due. I don't think any default had been made in the payment of interest." "I think it was Ferguson who made the proposition to convey the property to my wife; she was not consulted, nor did she know anything about it at that time. Subsequently I told her about it; don't remember exactly when." He further stated that he was sure he told Mrs. Jackson about the deeds, when Mrs. Rawlins brought suit against himself and Mrs. Jackson to obtain an injunction; "but I told her prior to that time, I do not remember just when." He further testified that he first learned that Mr. Ferguson had the property at the time the deeds were made.

Mrs. Jackson testified, and made confused and contradictory statements upon the subject as to when she first knew of the deeds. Finally, after her attention had been called to her testimony in another case, she said: "I remember testifying to that. I don't know whether it was at the time the deeds were made to me Mr. Jackson explained them to me, or at the time the suit was commenced against me. I don't know anything about it, except what Mr. Jackson, has told me, and I don't know when it was or what it was, and I don't know whether I have ever claimed the property as my own, or claimed that Mr. Jackson bought it with my money."

I think, upon this evidence, the court was abundantly justified in holding, as impliedly it did, that Mrs. Jackson did not understand until after this suit was commenced that she held the property to secure the loan to Mrs. Rawlins.

Mr. Ferguson testified also for the defense. His testimony was, in many important particulars, in sharp conflict with the testimony of Mr. Jackson. He, however, insisted that the deeds were made to secure the note in question. He only talked with Mr. Jackson about the matter, and did not testify that either Mrs. Jackson or the plaintiff were aware that the deeds had been given. He said, also, that an agreement had

been made for a sale of the property, and the understanding was, that if the sale was consummated Mrs. Jackson would convey to the purchaser, Mr. Jackson would retain a sufficient amount from the proceeds to pay the debt, and the residue should go to him, Ferguson.

Mrs. Rawlins testified that she never heard that the note was secured in any way until after Mr. Jackson ceased to be her attorney. She had conversed with him about the debt, and disapproved of the loan, but he did not inform her that it was secured.

To maintain the proposition that there is no evidence in support of the finding specified, appellant contends that the deeds only raise a presumption which can have no force against evidence; that they only furnish a rule of decision where there is no evidence. To this point, *Savings and Loan Society* v. *Burnett*, 106 Cal. 514, is cited. The presumption there under consideration was, that in a special instance the usual course of business had been followed, and that an instrument delivered to the obligee implied that the obligation evidenced by it had been performed. It was said that such presumptions or inferences were evidence of the weakest character, and simply controlled the decision in the absence of proof. It merely shifted the burden of proof. There is no more propriety in denominating the probative force of these deeds a mere presumption, than there would be in applying the term to the most positive and satisfactory testimony. It is evidence of a very high order, tending to show that the intention was to convey a full title. In *Henley* v. *Hotaling*, 41 Cal. 22, it is said that to authorize a court, "by evidence, to establish an equity outside of the deed, and thus to convert the deed into a mortgage, the evidence ought to be so clear as to leave no doubt that the real intention of the parties was to execute a mortgage, otherwise the intention appearing on the face of the deed ought to prevail." This language has been, in substance, often repeated since. A deed is evidence of such a controlling nature, that it is now only permitted to question its expressed effect where expressly authorized by statute, which instances are exceptions to the rule. These exceptions are, that a deed may be shown, contrary to its terms, to be a mortgage, and in certain cases a resulting trust may be established by parol. No proposition is more familiar than that a deed affords a very high degree of proof.

And many circumstances militate against the theory of the defense. The owner of the alleged mortgage had never heard of it, although she had expressed to her agent her disapproval of the loan. The agent, when called upon to make an affidavit for an attachment, forgot it, although the only important matter in respect to the affidavit was to show that the debt was or was not secured by a mortgage. The grantee named in the deed did not know that she held the title as security, and, of course, had never agreed to so hold it, or that she would permit it to be so applied. The deeds were executed eleven months after the loan had been made, and seven months after the note became due, and, according to the main witness, were tendered by the debtor, although no demand had been made upon him for payment or for security. The debtor testified that he suggested at the time that the property had been sold, and expected Mrs. Jackson to convey to the purchaser the property, and that he, Jackson, would retain sufficient of the proceeds to pay the debt due Mrs. Rawlins.

We do not think it necessary to determine whether, if the facts were as the witnesses for the defense testified, the transaction would amount to a mortgage. The practical conclusion of the court, that the idea that the deeds were given to secure the payment of the note was gotten up after Jackson was discharged by Mrs. Rawlins as her attorney, has sufficient evidence in its support to prevent our interference. There was at least a substantial conflict.

The judgment and order are affirmed.

McFarland, J., and Henshaw, J., concurred.