[L. A. No. 1211.   Department Two.—March 7, 1904.]

FRANK E. ABBOTT, Appellant, v. FRANK S. POND et al., Respondents.

WATER-RIGHTS—DISCHARGE OF WASTE WATER—INJUNCTION—DEFENSE OF PRESCRIPTION—SUFFICIENCY OF ANSWER.—In an action to enjoin the defendants from discharging waste water upon the land of the plaintiff, the defense of a prescriptive right so to do by means of a waste-ditch appurtenant to the respective lands of the defendants, maintained and used by defendants and their respective grantors for the requisite period, "continuously, openly, peaceably, uninterruptedly, under claim of right, adversely to the plaintiff and his grantors and predecessors in interest, and to all the world," is sufficient to admit evidence that the use or possession was notorious, and not clandestine, and that it was "hostile," and "under claim of title as their own."

ID.—DESTRUCTION OF DITCH BY PLAINTIFF—INJUNCTION AGAINST MAIN-
TENANCE—CONFINING WATER TO DITCH—FINDING—RELIEF OUTSIDE
OF ISSUES.—Where the plaintiff destroyed the ditch of the defendants
on his land, and by his complaint sought an injunction entirely to
prevent its maintenance, and the defendants, while claiming the
right to maintain it, did not claim the right to flood plaintiff's
land needlessly, the plaintiff is not entitled to the equitable inter-
position of the court to confine the water to the ditch that he
has destroyed, on the ground that the court found that water in
the ditch has sometimes overflowed upon plaintiff's land to his
damage, because defendants have not always maintained it in
proper condition. Such relief is outside of the matter litigated.

ID.—FINDING OF RIGHT TO MAINTAIN DITCH—DUTY OF DEFENDANTS.—
Where the whole case must go against the plaintiff on the finding
in favor of the right of the defendants to maintain the ditch, it
will be the duty of the defendants, when they have a ditch, to
keep it in repair, and to confine their waste water to it.

ID.—EXCLUSIVENESS OF OTHER RIGHTS—COMMON USE OF WASTE-DITCH
—SEVERAL RIGHTS.—The use of the word "exclusively" was not necesnessary to the answer. The waste-ditch might have been used as a
wasteway by the plaintiff and others, and this would not prevent
the use of the several defendants and their predecessors in title
from ripening into a right by prescription, if in no way interrupted
or interfered with; and several parties may use and acquire a
permanent and several right to use the same ditch for waste water.

ID.—ADVERSE USER—INFERRED FACTS—QUESTION OF FACT—SUPPORT OF
FINDINGS.—The question of adverse user, and of facts inferred
from the user, under the circumstances detailed by the witnesses,
is one of fact, within the domain of the jury or of the court sitting
as such; and where there is evidence tending to support the findings
in favor of the prescriptive right to the easement in dispute, the
findings will not be disturbed.

APPEAL from a judgment of the Superior Court of San
Bernardino County and from an order denying a new trial.
Frank F. Oster, Judge.

The facts are stated in the opinion.

Lafayette Gill, for Appellant.

Goodcell & Leonard, for Respondents.

GRAY, C.—This action was brought to enjoin defendants
from discharging waste water upon the land of plaintiff.

The plaintiff appeals from a judgment in defendants' favor
and from an order denying plaintiff a new trial.

1. The plaintiff objected to the defendants introducing any evidence of a prescriptive use or right to discharge their waste waters across the land of plaintiff, upon the ground that the facts set up in the answer "do not constitute a defense by way of prescriptive right or easement as claimed in the answer." This is in the nature of a demurrer to the answer. It is claimed that "defendants have not alleged that their use or possession *was notorious* and not *clandestine, nor that it was hostile to the claim of title of another, nor that such possession was held under a claim of title as their own, exclusive of any other right.*"

The language of the answer in this respect is as follows: "And during all said times these defendants and each of them, and their respective grantors and their predecessors in interest, have so maintained and used said ditch continuously, openly, peaceably, uninterruptedly, under claim of right, and adversely to the plaintiff and his grantors and predecessors in interest, and to all the world, and during all said times these defendants and their respective grantors and predecessors in interest have been, and these defendants now are as to their said respective lands, the owners of the right so to maintain and use said ditch, as a perpetual easement appurtenant to their said lands." That the use of the waste-ditch was "notorious" and "not clandestine" is sufficiently implied from the words used in the answer. Particularly the word "openly" shows that the use was not clandestine. And again it would be improbable that the use could be carried on as described in the answer without being known to any persons at all interested in the land, and this would make the use sufficiently notorious to satisfy the law governing rights by prescription as applied to easements. Nor was it necessary to use the term "hostile" in the answer. "Adversely to the plaintiff," etc., is the language commonly used in this connection, and it implies that the use of the ditch was in hostility to any claim the plaintiff might have made adversely or in hostility to such use. "Plaintiff's use of the right of way under a claim of right was necessarily hostile." (*Humphreys* v. *Blasingame,* 104 Cal. 40.)

Neither was the word "exclusively" necessary to the answer. The ditch might have been used also as a wasteway by plaintiff and others, and this would not prevent the use of

the several defendants and their predecessors in title from ripening into a right by prescription, provided the latter use was in no way interrupted or interfered with. Several parties could use and acquire a permanent and several right to use the same ditch for waste water, just as several parties could use and acquire similar rights in a private road. (*Humphreys* v. *Blasingame,* 104 Cal. 40; *Barnes* v. *Haynes,* 10 Gray, 188.) The words "under claim of right and adversely to plaintiff" also imply that the use was "under claim of title as their own." We think the answer was good, and the objection to evidence on the ground that the answer was bad was properly overruled.

Other objections are made in appellant's brief to the answer, but as these all seem to be based on the ground of uncertainty, and there seems to have been no demurrer to the answer on any ground, and the answer also seems reasonably free from uncertainty, we do not deem it necessary to take up these objections in detail.

2. The appellant contends that he was entitled to relief upon the strength of the twelfth finding, which is to the effect that defendants "have not at all times maintained said ditch along said line in a proper condition for the carrying of said surplus and waste water, and by reason of such failure such water has at times overflowed from said ditch upon plaintiff's lands to his damage." From an examination of the complaint it will be seen that it was not prepared for the purpose of compelling the defendants to confine their waste water to the waste-ditch nor to recover damages for the escape of the water from the waste-ditch; but the object was to have defendants enjoined altogether from flowing any water upon or across the land of plaintiff. The appellant had already destroyed defendants' waste-ditch on his land, and this suit was intended to settle the question as to defendants' right to maintain the waste-ditch. Defendants did not claim any right to use the waste-ditch in such a way as to needlessly flood plaintiff's land, or, to put it in the language of the findings: "The defendants have not, nor has any of them threatened to cause or allow any water or surplus water to flow from any of their lands down to or upon the plaintiff's land, except in and through said ditch, as they have the right to do, as aforesaid, nor threatened to cause or allow any such water

to overflow any of his land, except in so far as such overflow would result from his own wrongful act in closing and filling said ditch as aforesaid.'' The relief here suggested would therefore have been outside of the matter litigated. Of course, it is the duty of defendants to keep their waste-ditch in repair, when they have any ditch to repair, and to confine their waste water to it. Plaintiff, however, cannot have the equitable interposition of the court to confine water to a ditch which he has destroyed. The whole case must go against plaintiff on the finding of defendants' right to maintain the ditch.

3. The appellant attacks the findings of the court, which are to the effect that ever since 1888 ''the defendants and each of them and their respective grantors have severally caused and allowed said surplus and waste water from their respective tracts of land'' to flow through said ditch, using the same as a waste-ditch ''continuously, openly, peaceably, uninterruptedly, under claim of right, and adversely to the plaintiff,'' etc. And that since the year 1895 the defendants and their respective grantors have been the owners of such rights and of said easement.

There was substantial evidence tending strongly to show that the ditch, which the plaintiff, as it seems, plowed in and destroyed a few days before the commencement of the action, had been maintained and used as a waste-ditch by the several predecessors in title of the several defendants, and by the several defendants continuously before that time for a period running as far back as 1888, and that this use was without interruption and without asking the consent of the plaintiff or of his predecessors in title; that no objection to the use was made until shortly before the commencement of this action, and about five or six years after the period of limitations had run; that during all this time the land across which this waste-ditch ran was being cultivated; and that the ditch was frequently repaired and cleaned out by defendants and their predecessors. The ditch was situated on the dividing-line between two lots of about nine and a quarter acres each, numbered 39 and 42 respectively, and was partly on each of these lots. The plaintiff had owned 39 since 1887, and had cultivated it continuously from as early, anyway, as 1890. He acquired lot 42 only a short time before the beginning of this

action. That he must have known of the existence of the ditch is plainly apparent from the evidence. The land was cultivated for him by his agents, and he seems to have been frequently upon it during the entire period of this cultivation, beginning as early, certainly, as 1890. The ditch was plainly apparent upon the ground, and, as one of the witnesses says, he had to cross it to get to his lot 39. It is altogether inconsistent with the evidence to suppose that plaintiff did not all the time know of the existence of this ditch and of its use by defendants and their predecessors as a wasteditch. There is no pretense of any interference with that use up to about thirty days before the commencement of this suit.

The evidence in this case on this question of an easement is similar in many respects to the evidence given upon the same point in the case of *Humphreys* v. *Blasingame,* 104 Cal. 40. In that case the trial court had found a prescriptive right in the plaintiff to the easement, and this court said: ''It is with the facts inferred from the use under the circumstances detailed by the witnesses that appellant finds fault. But these inferred facts are as fully within the domain of the jury, or of the court sitting without a jury, as the facts from which they are inferred.'' The court also quotes from the case of *Thomas* v. *England,* 71 Cal. 456, as follows: ''To perfect an easement by occupancy for five years, the enjoyment must be adverse, continuously, openly, peaceably. It must be adverse, and under claim of legal right so to do, and not by the consent, permission, or indulgence merely of the owner of the alleged servient estate. This is quite obvious in cases where the consent, permission, or license is expressly given. But it is no less true where the permission or license is implied, as it may well be, from the facts and circumstances under which the use was enjoyed. The question is one for the jury, or for the court sitting as such, to determine as a fact, in the light of the relations between the parties and all the surrounding circumstances.''

In *Clarke* v. *Clarke,* 133 Cal. 670, the court said: ''The question as to whether or not the use was under a claim of right or a mere matter of neighborly accommodation was a question of fact to be determined by the court in the light of the relation of the parties, their conduct, the situation of the property, and all the surrounding circumstances.''

We have not quoted all the evidence in the case at bar tending to show that the use was adverse and not merely permissive. Nor would it serve any good purpose to do so. It is sufficient to say that the question of adverse use was a question of fact for the trial court to decide, and we think there is evidence sufficient to support the conclusions reached in the findings referred to.

4. It is unnecessary to follow appellant's argument further. As was said by his attorney at the beginning of the trial, this question of an easement was the only one in dispute between the parties. It being decided against the plaintiff, the judgment must follow it; and it is therefore not of much importance to examine the other findings complained of to see whether they are supported by the evidence or are as certain and free from ambiguity as they should be. The findings are plain and certain, as far as concerns the easement, and they clearly support the action of the court in refusing the plaintiff an injunction and giving the defendants a judgment for costs. The other points urged upon our attention by appellant are therefore immaterial.

We advise that the judgment and order be affirmed.

Chipman, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Lorigan, J., McFarland, J., Henshaw, J.