[L. A. No. 2284. In Bank.—June 22, 1911.]

## JOHN BURR, Respondent, v. MACLAY RANCHO WATER COMPANY (a Corporation), Defendant and Appellant, and R. H. HILLE et al., Interveners and Appellants.

WATER-RIGHTS—PERCOLATING WATER—DIVERSION BY OVERLYING LAND-OWNER—DEMURRER FOR UNCERTAINTY—APPEAL.—Where a complaint, considered as a whole, plainly sets forth a cause of action by an owner of land overlying a subterranean supply of percolating water to restrain a similar owner from making an unlawful diversion of the water for use on lands not so situated, the overruling of a de-murrer thereto because of the uncertainty caused by an isolated allegation which rendered it doubtful whether the plaintiff was pro-ceeding on that theory, or as a riparian owner of land upon an underground stream or lake, will not warrant a reversal, when the record on appeal shows that the trial was had on the theory that the case was one involving relative rights to percolating waters.

ID.—JUDGMENT BROADER THAN ISSUES—MODIFICATION ON APPEAL.—In such an action, where no issue was raised as to the defendant's right to the use of the percolating water on his overlying land, a judgment in favor of the plaintiff restraining the unlawful diversion, which is so broad as to prevent the defendant from using the water on his overlying land, will be modified accordingly. The judgment will also be modified, in so far as it purports to restrain the defendant from receiving water from other persons, from other water sources, where no issues involving the rights to such water were raised by the pleadings.

ID.—CORRELATIVE RIGHTS OF OVERLYING LANDOWNERS IN PERCOLATING WATERS.—The existence of a common supply of water in a state of percolation of such a character that the taking from one overlying tract will substantially diminish the quantity available in another overlying tract, gives correlative rights in the common supply and creates a right in one overlying landowner to prevent another from taking the water to distant lands not overlying the common supply, if such taking is injurious to him.

ID.—FINDINGS AS TO COMMON SUPPLY OF PERCOLATING WATER—EVI-DENCE.—Findings are to be construed so as to support the judgment rather than so as to overthrow it. So construed, the findings in the present case are sufficient to show a common supply of percolating water, lying in continuous strata saturated with water and extending under the lands of the plaintiff and into and under the part of the land of the defendant in which his wells and pumps are situated,—and the evidence, taken in connection with the admissions of the pleadings, is sufficient to sustain such findings.

ID.—ESTOPPEL TO CLAIM ADMISSION IN PLEADINGS—EVIDENCE AS IF
FACTS WERE IN ISSUE.—A respondent may be estopped to claim on
appeal that certain facts were admitted by the pleadings, if the case
was tried upon the theory that the facts admitted were actually in
issue; but the circumstance that evidence properly introduced to
prove a disputed fact may also have tended in some degree to prove
the admitted facts will not justify such conclusion, nor raise any
estoppel to prevent the plaintiff from claiming the admission for
the purpose of sustaining the judgment on appeal.

ID.—EASEMENT IN PERCOLATING WATER—FINDINGS.—Upon a review of
the evidence, it is held sufficient to sustain the findings that the de-
fendant has no paramount easement in the waters underlying his
land in excess of the thirty miner's inches originally developed
thereon, and subject to which the plaintiff acquired and holds his
land.

ID.—APPROPRIATION OF PERCOLATING WATERS—LIMITATION ON RIGHT.—
The rule with respect to the appropriation of a fixed quantity of
percolating water is substantially like that regarding the appropria-
tion from a surface stream. One who acquires adjoining property
after the appropriation has begun, takes subject to the right the
appropriator then had, but the appropriator does not, because of his
first taking, have any right to take an additional quantity thereafter.

ID.—ESTOPPEL—ACQUIESCENCE IN TAKING OF PROPERTY FOR PUBLIC USE—
DENIAL OF INJUNCTION.—The rule that one who knowingly allows
his property to be taken for public use, sees expensive works installed
and the public service begun therewith, without protest, cannot main-
tain an injunction to restrain the further taking, and is limited to
the remedy of an action for damages, is not applicable to the taking
of property for private use. With respect to private uses, the
general law of estoppel controls.

ID.—WATER TAKEN FOR PRIVATE USE—USE ON LOTS SOLD WITH WATER-
RIGHT.—Water taken by an overlying landowner from a subterranean
supply of percolating water, which is not offered to the public gen-
erally, or to all who may want it within a certain territory, but is
used solely to fulfill the private contractual obligations of the taker
to deliver water to certain lots which it has sold with a water-right,
is devoted to a private and not to a public use.

APPEAL from a judgment of the Superior Court of Los
Angeles County. M. T. Allen, Judge.

The facts are stated in the opinion of the court and in the
opinion reported in 154 Cal. 428.

Hunsaker & Britt, for Interveners and Appellants.

Williams, Goudge & Chandler, and Cochran, Williams & Phillips, for Defendant and Appellant.

Stephens & Stephens, Edward L. Payne, and Harris & Harris, for Respondent.

THE COURT.—From the judgment in this action the plaintiff appealed on the judgment-roll alone and his appeal resulted in a modification of the judgment of the court below by this court. The report of the case is to be found in 154 Cal. 428, [98 Pac. 260].

The appeal now before us is that of the defendant and the interveners from the judgment and is presented on the judgment-roll, together with a bill of exceptions. The nature of the case and many of the facts appear in the opinion filed in the matter of the plaintiff's appeal and we shall not, therefore, undertake to make a new statement of the same matters.

The appellants make the point that the court erred in overruling the demurrer to the complaint. The facts stated make out a case under the theory that the plaintiff and the defendant were the owners of land overlying a subterranean supply of percolating waters and that the doctrine of *Katz* v. *Walkinshaw*, 141 Cal. 116, [99 Am. St. Rep. 35, 64 L. R. A. 236, 70 Pac. 663, 74 Pac. 766], applies. They are not substantially different from those appearing in the complaint in the Katz case which was there held to state a case for unlawful interference with a supply of percolating waters common to both parties. There is an allegation that water-bearing strata extending, under the lands of plaintiff and defendant, "are in streams, or subterranean bodies or chambers, and are in a state of continuity from their sources to the said dike." This, it is urged, makes it uncertain whether plaintiff is claiming as an owner of land overlying a common supply of percolating water, or as riparian owner of land upon an underground stream or lake. There is nothing in the complaint to indicate that the plaintiff was claiming as a riparian owner upon a lake or stream. A reading of the whole complaint shows plainly enough that the pleader, notwithstanding his somewhat vague use of the word "stream," was not undertaking to set forth the existence of a defined watercourse, but to allege that a body of percolating water was underlying the lands of the

plaintiff and a part of the land of defendant. Beyond all this, there can be no question but that the defendant was not misled by any uncertainty in this respect, since the record shows conclusively that the plaintiff did not claim that any underground stream could be shown to exist, and that the parties, throughout, were dealing with the case as one involving relative rights to percolating waters. Even though the demurrer might have been sustained on this ground, its over-ruling furnishes no ground for reversal. (*Alexander* v. *Central etc. Co.*, 104 Cal. 532, [38 Pac. 410]; *Jager* v. *Cal. Bridge Co.*, 104 Cal. 542, [38 Pac. 413]; *Rooney* v. *Gray Bros.*, 145 Cal. 753, 79 Pac. 523].)

It is strongly urged by the appellants that the findings fail to show that the whole of plaintiff's lot 191, or any part of lots 153 and 190, overlie the underground basin or water-bearing strata from which the defendant pumps water and that if such findings are to be construed as showing that the supply of water claimed by plaintiff as extending under said lots is the same as that from which the defendant is pumping, they are without support in the evidence.

The findings state that, underlying the entire tract of twenty thousand acres conveyed by Maclay to Widney and others as trustees in 1885, which includes all the lands in controversy, "including the lands of plaintiff and extending to the foot of the mountains on the north, about three or four miles northerly from the lands of the plaintiff, . . . are water-bearing strata of varying depths of sand, boulders, and coarse material, and lying over each of these strata are impervious strata of clay or cement extending towards, but not entirely to, the said mountains. That at a distance of about —— miles in a southerly direction from plaintiff's lands, there extends across the said valley and across said 20,000 acre tract, a dike which is almost or entirely impervious to water." Another finding states that the dike crosses the valley and passes through defendant's lot 192 and that it "arrests the progress of the water underlying plaintiff's land and the water underlying the northern part of lot 192." Another states that the subterranean waters extending through said water-bearing strata are supplied by the rains which fall upon the mountains to the north and east of said valley and "find their way into said water-bearing strata and permeate the said strata" and

percolate through the same underneath the "overlying stratum of clay or cement down to the said dike, by means of which the movement of said water is arrested, and the waters im-pounded, forming a subterranean basin wherein the said subterranean waters are retained." Also: "The waters in said water-bearing strata underlying the lands of plaintiff and other lands in the vicinity, including the lands in which defendant's pump is situated, are, in their natural state, under pressure from the head of the waters near said mountains, and are by nature restrained and retained in said strata by the said dike and the overlying strata." Findings are to be construed so as to support the judgment, rather than so as to overthrow it. It would require a very narrow and forced construction of these findings to hold that they do not show a common supply of percolating water, lying in continuous strata saturated with water and extending under the three lots of plaintiff and into and under the part of the defendant's lot 192 in which the defendant's wells and pumps are situated. We hold that they support the judgment in this particular.

With respect to the sufficiency of the evidence, we think that, when taken in connection with the admissions made by the pleadings, the evidence is sufficient. There is, it is true, but little evidence that the water-bearing strata supplying defendant's pumps extends under lots 190 and 153, and that evidence is altogether circumstantial. But that exact point is covered by the admissions of the pleadings. Lot 190 adjoins lot 191 on its northwesterly side. Lot 153 corners with lot 190, lying almost due north of it. The slope of the land is from the north towards lot 192 through the three lots of plaintiff. The complaint avers that underlying the lands of the plaintiff and extending to the foot of the mountains on the north are water-bearing strata, that the waters therein are in streams or subterranean bodies or chambers and are in a state of continuity from their sources to and under lot 192, that the waters are supplied by winter rains falling upon the mountains, which waters find their way into said water-bearing strata, that under the plaintiff's lands and defendant's lot 192, where its pumps are located, said waters are, in their natural state, under pressure and are restrained and retained in said strata by said dike, and that the water pumped by defendant is taken from said water-bearing strata underlying said lands of plain-

tiff and defendant. These allegations are all admitted, either expressly or by failure to deny them, except that it is denied that the waters in said strata "are in streams, or subterranean bodies or channels (chambers), or in any state of continuity except as all other percolating waters are in such continuity," and except that it is denied that the water pumped by defendant "is taken from the water-bearing strata underlying the lands of plaintiff." The effect is that the answer admits that there are water-bearing strata underlying the lands of the plaintiff and the defendant's lot 192 and extending from the latter, under plaintiff's lots, and some three miles northerly to the mountains, that the waters therein are under pressure, in their natural state, and are in a state of continuity *as percolating waters,* throughout said strata under the said lands of plaintiff and defendant. It does not deny the existence of percolating water in continuity and under pressure in the strata extending under all the lands. The existence of streams or bodies of water extending from plaintiff's lands to lot 192 is not essential to plaintiff's case. Under the doctrine established in *Katz* v. *Walkinshaw,* 141 Cal. 116, [99 Am. St. Rep. 35, 64 L. R. A. 236, 70 Pac. 663, 74 Pac. 766], and subsequent cases of similar effect, the existence of a common supply of water in a state of percolation of such a character that the taking from one overlying tract will substantially diminish the quantity available in another overlying tract, gives correlative rights in the common supply and creates a right in one such landowner to prevent another from taking the water to distant lands not overlying the common supply, if such taking is injurious to him. The existence of such common supply of percolating water under pressure extending under all the lands is admitted. To prove that the water taken by defendant came from the strata common to all, the plaintiff introduced evidence showing that the pumping complained of immediately lowered the level of the water in the wells on plaintiff's lot 191, adjoining lot 192, where the defendant was pumping. The wells on lot 191 obtained water from the water-bearing strata admitted to exist. The evidence that defendant's pumps lowered the water in plaintiff's wells, established the fact that the water pumped by defendant was taken from the water-bearing strata underlying the lands of plaintiff, which is the only material fact denied. This conclusion can

CLX Cal.—18

be avoided only by assuming that the water-bearing strata from which water is pumped on the two lots, 191 and 192, do not extend beyond those lots and are different strata from those common strata admitted to exist. That this would be a possible explanation of the fact that the plaintiff's wells were affected, may be conceded. But it was more reasonable to infer that the water came from the admitted common water-bearing strata, than from some other strata not shown to exist. The allegations of the complaint referred to the strata from which plaintiff obtained water by means of his wells on lot 191, and the admissions of the pleadings must be understood as referring to the same strata. The proof of a taking from the strata under lot 191 was evidence from which the trial court might infer a taking from the strata under the other lots. This court is bound by its conclusion. It follows that the findings are sustained by the evidence.

Appellants claim that the plaintiff is estopped to claim these admissions because, as they say, the case was tried below upon the theory that the facts admitted as above shown, were actually in issue. It may be conceded that a respondent, in whose favor the lower court has decided, may be estopped in this manner to claim the benefit of such admissions. (*Spiers* v. *Duane,* 54 Cal. 176; *Rawlins* v. *Ferguson,* 133 Cal. 470, [65 Pac. 957]; *Wiley* v. *Crocker Bank,* 141 Cal. 518, [75 Pac. 106].) But we do not think that it necessarily appears that the case was tried below upon that theory. The evidence introduced by plaintiff, and which it is claimed shows that he believed that the admitted facts were really denied was all admissible to prove that the water taken by defendant came from the water-bearing strata underlying plaintiff's lands and to prove the existence of the alleged dike. It was necessary that the plaintiff should produce evidence to prove these disputed facts. Its introduction would not authorize the adverse parties to assume, or believe, or to act upon the theory that the defendant was giving this evidence solely to prove the admitted facts. No declaration to that effect is pointed out. The circumstance that it may also have tended in some degree to prove the admitted facts would not justify any such conclusion by the adverse parties nor raise any estoppel to prevent the plaintiff from claiming the admission for the purpose of sustaining the judgment on appeal.

The appellants attack, also, the finding that there is a dike running through defendant's lot 192 and preventing the percolation of water beyond such dike. It will not be necessary to go at length into the evidence offered on this point. We think it sufficient to say that the finding is fully supported by the evidence of the natural conditions, together with the showing that the waters in the wells to the north and east of such supposed dike were diminished by defendant's pumping, while that of the wells lying on the other side remained unaffected thereby. The appellants concede in their reply brief "that there is some evidence showing the occurrence of a formation for a short distance, of the nature of a dike." While the exact location and extent of this dike were not clearly shown, there was evidence sufficient to justify the conclusion that it was of sufficient extent to prevent the percolation or passage of waters underlying plaintiff's lands to the lands upon which the waters pumped from block 192 were being used.

The court found that the plaintiff originally acquired and now holds the title to his lands subject to a right in said trustees and the defendant, as their successor, to take from wells on lot 192 a flow of water equal to thirty miner's inches, for use on other parts of said Maclay Rancho, but not subject to the taking of any larger quantity therefrom, that he had no notice of any plan of said trustees to devote the waters in said lot to use on other parts of the rancho, other than is set forth in the deed to the trustees to Maclay and the deed from the trustees to the plaintiff and his predecessors in interest, that the trustees did not take, use, or manage the wells on lot 192 in pursuance of any plan, except as shown in said deeds; that it was not the purpose of Maclay and the trustees that all the water that should be obtained from said wells was to be supplied for use on the lots in the rancho sold to interveners and others, except as manifested by said deeds, and that the trustees did not sell to purchasers of lots the right to receive water from said wells except as indicated by the deeds to the respective purchasers. It is claimed that these findings are contrary to the evidence and that the effect of the several deeds and acts and conduct of the trustees and purchasers of lots with water-rights from them, including plaintiff, was to create an easement appurtenant to each

lot to share in all the water that could by any means or at any time be obtained from lot 192, and to put a corresponding burden on lot 191 and all other lots which might be affected by such taking, to suffer the consequent depletion of the percolating or other waters therein. Or as otherwise stated by appellants, that the lots sold with the water-right constitute the proximate body of land for the benefit of which the defendant has the right to pump water from lot 192.

The deed of Maclay conveying the twenty thousand acres to the trustees provided that they should deposit in bank the sum of twenty thousand dollars as an improvement fund to be used in constructing dams, reservoirs, and pipe-lines, for storing and supplying water to the tract of land; also in sinking artesian wells and in such other means as should be advisable for developing and storing a water supply for said lands; also in surveying and platting the land and putting it on the market for sale. The trustees were to sell the lands in subdivisions, but the artesian wells, springs, and sources of water supply, reservoir sites, water pipes, and conduits were not to be sold except by the joint deed of all the trustees. No other provisions were made concerning water. In conveying the lots to the several purchasers, including the plaintiff, there was inserted in each deed a reservation of "the right to lay water pipes across the land," and of "all artesian water that may be developed on said land and not used thereon." The deeds to the interveners and that to plaintiff for lot 191 each also contained a specific grant of a right to a stated quantity of water, the usual description thereof being "the right to use fifty-four gallons per hour per acre on said land." Nothing was said in either of them as to the source from which this water was to come. Something over three thousand acres were conveyed in this manner. The deed to lot 191 was made in 1886. The deeds to lot 153 and the northeasterly twenty acres of lot 190 were made in 1892 and each contained the reservation in regard to pipe-lines and artesian water, but further declared that "no water-right is hereby conveyed." This we understand to mean simply that the usual right to water from the defendant's system was not given. It does not constitute a reservation or limitation of the right of the grantees to use upon

the lots the percolating or other water contained therein. The remainder of lot 190 was conveyed to Burr in 1893. The deed thereto did not mention water-rights, but contained the aforesaid reservations concerning artesian wells and pipe-lines. The deeds to the lots of plaintiff were executed by all the trustees and were therefore effectual to convey all the waters in the land not expressly reserved in the deeds. These comprise all the written provisions relating in any way to the alleged reservation or dedication of the waters of lot 192 to the use of other lots or land.

In pursuance of the plan contemplated by the deed of trust, executed in 1885, the trustees immediately proceeded to expend the twenty thousand dollars in the construction of a submerged dam in Pacoima Creek and a reservoir on lot 192, in the boring of several wells on lot 192, in the laying of a system of pipe-lines for carrying the water from the dam and the wells to the lots in the tract which were to be sold with an agreement to deliver water thereto, and in surveying, subdividing, and marketing the land. From the wells a natural flow of thirty miner's inches of water was obtained. The dam took from another distinct source and the supply from it varied from twenty-two inches in midsummer to one hundred inches in midwinter. This development and expenditure was completed in 1890. From that time until about 1899 the water system thus established was operated and apparently the only water taken from the wells up to that time was the natural flow thereof, which, of course, was fluctuating. In 1896 the casings of some of the wells on lot 192 were cut down to a point sixteen feet below the surface, which for some time increased the artesian flow to forty or fifty inches. Of all these things the plaintiff was informed as they took place.

Manifestly his title to his lots was acquired with knowledge of the claim to the thirty inches of water taken from the artesian wells on lot 192 by the defendant and the lots are held by him subject to the right of the defendant to continue that taking. The judgment gives it that right and to that extent it is conceded to be correct. But the provisions in these deeds do not operate to dedicate or reserve all the water which might be obtainable from lot 192 to the use of the other lots in the tract. There was no express reservation

of any water in that lot. It is only by implication from the power given and the development under it that such dedication or reservation can be established. The dedication or reservation, such as it was, extended to and embraced only such waters as were obtained by the expenditure of the improvement fund. The effect of the provision regarding that fund was exhausted, so far as any appropriation of water is concerned, when the fund was all expended. There was no notice or declaration of any purpose or claim of right to expend additional money and take additional water over and above that which was obtainable from the wells sunk and the works installed with the original fund.

We do not find anything in the extraneous facts which, either of themselves or in connection with the writings, constitutes a declaration of trust, a reservation or a dedication of all the waters obtainable from lot 192, in favor of the other lots sold with water-rights, giving a right to them to use said water thereon. There was nothing in the conduct or practice of the trustees, even if it had all been disclosed to Burr, which evinced a design to set apart for the benefit of the water system they instituted, any greater quantity of water from lot 192 than the thirty inches obtained by the original artesian wells. No declaration was made, either at the time his lots were purchased or afterwards, that the trustees intended at some future time to bore more wells on lot 192, or to take more water therefrom for the future necessities which might arise, or that the water supply in his lots was to be held by him subject to such further depletions as they might afterwards choose to make for the use of other lots in the tract. The reservation in each deed, of all artesian water that might be developed on the lots and not used thereon, implied an agreement that each purchaser might use such artesian water thereon, so far as necessary, and to that extent it was inconsistent with the existence of a right in the trustees to exhaust or deplete such waters by pumping on other lots, to such an extent that there would not remain enough obtainable by reasonable effort from such lot for its use. That reservation clearly did not create any burden in favor of the wells on lot 192 against the adjoining lots. The appropriation of thirty inches from the supply in lot 192 had, in effect, already been made at the time his lots were purchased.

The rule with respect to such an appropriation should be substantially like that regarding the appropriation from a surface stream. One who acquires adjoining property after the appropriation has begun, takes subject to the right the appropriator then had, but the appropriator does not, because of his first taking, have any right to take an additional quantity thereafter. The increase of the natural flow in 1896 was an additional taking to which plaintiff was not bound to submit. It does not appear how long it continued and from the fact that a small pump was installed in 1899 it is to be inferred that the natural flow before that had fallen to at least the original thirty inches, especially as two extraordinary dry years had intervened. The evidence does not show a prescriptive right in defendant to take the additional quantity obtained in 1896. Our conclusion is that the findings in question are sufficiently sustained by the evidence and that the appellants have no paramount easement in the waters of lot 192, beyond the original thirty miner's inches.

The appellants rely upon facts constituting, as they claim, an estoppel upon plaintiff to object to the pumping and diversion of additional water. In 1899 the defendant placed a pump in one of its wells and from that time until 1902 pumped therefrom from twenty to thirty miner's inches of water in addition to the artesian flow therefrom, which was very small. This lowered the level of the water in the plaintiff's wells several feet, but not so as to prevent his pumps from obtaining sufficient water for his use. In 1902 defendant enlarged its pumping plant and began taking 125 miner's inches of water. This large increase immediately lowered the water in plaintiff's wells so far that his pumps would not reach it. He had made no decided objection to the increase of 1899, although he did not consent thereto. But when the increased pumping of 1902 began, he at once gave notice to defendant that it was injurious to him and that he would hold defendant liable for all damages caused thereby. He had knowledge of the preparations made by the defendant and the installation of the new pumps for the purpose of increasing its taking. The defendant did not consult him about it, nor, so far as the evidence shows, rely on his consent or acquiescence, but proceeded with its work of its own motion, clearly manifesting an intention to disre-

gard any rights of plaintiff. One of its operations on lot 192 was the sinking of a new well much deeper than any other in the vicinity. When it had reached a stratum of clay which had not been penetrated by any other well, the plaintiff said to the defendant's managers that he was anxious to see the well go through that stratum. It was obvious that he hoped that a new supply of water would be found, so that the strain on the known supply would be relieved. He testified that he did not encourage them to put in the new pumps, or to take more water from the existing supply.

The appellants, on this point, rely upon the rule stated in *Katz* v. *Walkinshaw*, 141 Cal. 136, [99 Am. St. Rep. 35, 64 L. R. A. 236, 70 Pac. 663, 74 Pac. 766], in regard to an estoppel upon one who knowingly allows his property to be taken for public use, sees expensive works installed and the public service begun therewith, without protest, and stating the rule to be that in such case he will be limited to the remedy of an action for damages. (See *Barton* v. *Riverside W. Co.*, 155 Cal. 515, [23 L. R. A. (N. S.) 331, 101 Pac. 790].) The water taken by the defendants to supply the needs of the interveners is not taken for public use. It is not offered to the public generally, or to all who may want it within a certain territory. It is taken solely to fulfill the private contractual obligations of the defendants to deliver water to certain lots which it has sold with a water-right. This is a private use. (*Hildreth* v. *Montecito*, 139 Cal. 29, [72 Pac. 395]; *Barton* v. *Riverside W. Co.*, 155 Cal. 518, (23 L. R. A. (N. S.) 331, 101 Pac. 790]; *Gilmer* v. *Lime Point*, 18 Cal. 252.) The rule concerning the establishment of public service with property of another taken without previous compensation, has for its basis chiefly the inconvenience to the public if the service is interrupted by the issuance of an injunction to restrain the use. It does not apply to the taking of property for private use. With respect to private uses, the general law of estoppel controls. That the necessary elements of such an estoppel are lacking here will be seen by reference to the rule as stated in *Lux* v. *Haggin*, 69 Cal. 266, [4 Pac. 919, 10 Pac. 674], and comparing it with the facts above related. It is unnecessary to pursue this subject, since the appellants do not seriously claim such an estoppel. For a number of years prior to 1902, the defendant furnished water for domestic use to persons living in the

villages of Pacoima and Fernando, whether as a public use or not is not clearly apparent. Conceding it to have been a public use, the facts do not bring the case within the rule stated in *Katz* v. *Walkinshaw*. There is no evidence that Burr was ever informed that the defendant proposed to take the additional water for use in said villages, or that he stood by and saw the preparations made with knowledge of any such purpose. The previous supply had apparently been sufficient for that purpose. The new wells and pumps were not constructed for the purpose of securing water for Pacoima and Fernando, but for the supplying of the interveners and others to whom lots had been sold with similar water-rights. We do not think the facts proven show any abuse of discretion in the trial court in determining that the plaintiff was not estopped to maintain the action.

It is urged that the judgment is erroneous in that it does not allow the defendant to take water for use upon lot 192 itself. So far as that lot lies over the water supply, the defendant's rights are equal to and correlative with those of the plaintiff. Those rights were not, however, presented to the court, and it did not undertake to adjudicate them. The controversy between the parties was over the question whether the defendant had the right to divert waters from lot 192 to land beyond the dike and not overlying the water-bearing strata. Such diversion was the only use complained of in the complaint, and the pleadings on the part of the defendant and the interveners asserted the right to so divert the waters. At the same time, the decree should not have been so broad as to deny to the defendant any right to apply the waters under lot 192 to the use of the land over those waters. Any injury resulting to the defendant in this respect may, however, be obviated by a modification of the judgment.

So, too, the decree, we think, goes beyond the issues in restraining the defendant from receiving water from any other persons from any water sources above the said dike. The pleadings afford no foundation for such restraint. The complaint alleged no threat to take water otherwise than by means of pumps installed in wells on lot 192.

Complaint is made of the provisions limiting defendant to the "natural flow from the artesian wells on lot 192, as the same existed . . . on May 9, 1904." If this clause be uncer-

tain and indefinite, as is claimed, the ground of objection is removed by the judgment on the former appeal, whereby the decree was modified so as to permit the defendant to pump from lot 192, at the times when it is allowed to pump therefrom, a quantity of water which, added to the natural flow, will equal a flow of thirty inches. This clearly defines the extent of defendant's rights arising from its use of the waters prior to increased pumping commencing in 1902.

The appellants attack findings other than those to which we have adverted, but we think the findings so questioned are either amply supported by evidence or are not essential to the maintenance of the judgment. Except so far as indicated, we find, in the particulars in which the judgment is upon this appeal open to attack, no material error in the record.

It is ordered that the judgment be further modified as follows:—

1. By adding thereto, immediately preceding the date line thereof, the following:

"The portions of this judgment restraining the defendant from pumping water from lot 192 are to be construed as limiting its right to pump such water for transportation to and use upon lands lying to the south and west of the dike hereinbefore referred to. Nothing in this judgment is to be construed as limiting or defining the extent of the defendant's right to pump water from said lot 192 at all times for domestic use or irrigation upon the portion of said lot lying to the north and east of said dike."

2. By striking from paragraph V of said judgment the words: "by receiving water from any other persons, from any water sources above the said dike, and."

As thus modified the judgment shall stand affirmed.

Rehearing denied.