[Civ. No. 14233.   Second Dist., Div. Two.   Mar. 20, 1944.]

WALTER L. FRYER et al., Respondents, v. WILLIAM HARRY FRYER et al., Appellants.

Allard & Whyte for Appellants.

Horowitz & McCloskey for Respondents.

MOORE, P. J.—This action was commenced for declaratory relief and to settle a controversy between two brothers and for injunction against defendants' interfering with plaintiffs' right to an easement over defendants' land, polluting water in a tank owned by the parties as tenants in common, draining the water from the tank to such extent as would prevent its free flow therefrom, and preventing plaintiffs from keeping the tank filled.

Prior to September 5, 1935, Sarah R. Fryer was the owner of lots 1, 2, 3, and 4 of tract 2154, Los Angeles county. For about thirty years prior thereto defendants were the owners

of lot 6 of the same tract. Mrs. Fryer's lands were a series of adjoining parcels aggregating about 50 acres adapted to citrus culture. Lot 6 consisted of 14 acres and had been a productive orange ranch during its ownership by defendants. On September 5, 1935, Mrs. Fryer conveyed the four parcels to her children as follows: to Walter, lots 1 and 3; to William, lot 2; to her daughter Cullie, lot 4. Both Cullie and Walter were granted rights of way over lot 2, on which at that time there was a well and a pumping plant. Evidently for the purpose of providing each of the three children with sufficient water for the development and cultivation of the lands so conveyed, on the same day by grant deed she conveyed to each of the children a one-third interest in all water, water rights and rights to develop water in and upon her four parcels. By that deed it was provided that all water developed on any one of the four parcels should belong in equal undivided shares to the three children, who should share equally the expense for the development of the water and making it available for beneficial use only upon those lands.

The controversy between the brothers had its genesis in the relation of lot 6 to the lands they had received from their mother. On April 24, 1934, defendants found it necessary to procure a loan from the Federal Land Bank of Berkeley, to be secured by a lien upon lot 6. Such loan was dependent upon defendants' obtaining evidence of their ownership of definite water rights appurtenant to lot 6. Notwithstanding they had, with the permission of the mother, utilized water from lot 2 in the irrigation of lot 6, on that date William caused his mother to execute an agreement which recited her installation of a well and pumping plant on lot 2, to be maintained by her and through which she should deliver to lot 6 sufficient water to irrigate so much of lot 6 as might be specified by defendants. That agreement is hereinafter referred to as the "water contract." By its terms defendants were to pay 3 cents per inch for all water delivered to lot 6 under the contract, which declared that the water rights established thereby were for the benefit of and appurtenant to lot 6. The instrument declared that one of the reasons for the agreement was "to create a water right for said land of second party" to facilitate the procurement of the loan. The agreement also provided that it might be cancelled after the mortgage to the Federal Land Bank had been fully

346

paid upon giving the notice provided by its terms. Having discharged the mortgage on December 31, 1942, defendants by their notice cancelled the water contract and thereby relinquished all rights which they had gained by virtue of that instrument.

On February 1, 1937, plaintiffs purchased from Cullie lot 4. Thereafter the controversy attained to serious proportions following the cancellation. Someone had polluted the water in the tank on lot 2; someone had plowed up plaintiffs' rights of way over lot 2 and defendants insisted upon using water from the well on lot 2 to irrigate lot 6 notwithstanding their cancellation of the water contract. Most of the issues between the parties were settled by stipulation in the trial court, but the claim of defendants that they had by prescription acquired the rights to the use of water developed on lot 2 for the irrigation of lot 6 was decided against them. This is the primary contention for our determination.

Never, during the lifetime of Mrs. Fryer and prior to her water contract, did appellants utilize the water from lot 2 otherwise than with her consent. Following the execution of that instrument they used the water pursuant thereto, since in effect it had superseded every vestige of a right to water theretofore obtaining. █ It is the law that in order to acquire by prescription a permanent right to realty or to water developed on the land of another the enjoyment thereof must have been adverse, continuous, open, and uninterrupted for not less than five years. █ The use of water taken from the lands of a neighboring owner must have been adverse and hostile under claim of legal right to do so, and for the period necessary to gain title for possession under the statute of limitations. (*Abbott* v. *Pond,* 142 Cal. 393, 398 [76 P. 60].) The claim must have been declared to the titular owner. Unless the use has been hostile to the title of the servient estate then no titular right has become vested in him who makes the claim of title by adverse possession. █ Use of water from another's land with the latter's permission has no efficacy in gaining title. Neither does knowledge of the owner that his water is used by another suffice to vest title by continued use, unless for the five-year period the owner is advised that the water is being taken under a claim of ownership of the taker. █ Withal the law presumes that water taken from the land of a neighbor belongs to him and is used with his permission or by his acquiescence. (*Clarke*

v. *Clarke,* 133 Cal. 667, 669 [66 P. 10]; *Strong* v. *Baldwin,* 137 Cal. 432, 438 [70 P. 288]; *Stufflebeem* v. *Adelsbach,* 135 Cal. 221, 225 [67 P. 140]; *Half Moon Bay Land Co.* v. *Cowell,* 173 Cal. 543 [160 P. 675].)

Not only did appellants gain no right by prescription, but they are confronted with written agreements which definitely refute their claims. By the deed which conveyed lot 2 to appellants, Mrs. Fryer reserved all water and water rights and rights of way over lot 2 to convey the water to any of the four lots which she had owned. Also, her deed of the water rights in the four parcels provides that all water developed on any of the four lots shall belong to the children in equal undivided shares and shall be put to beneficial use upon those four lots only. The truth of such recital in the deed accepted by appellants is deemed conclusive and no evidence can contradict it. (Subd. 2, Code Civ. Proc., § 1962; *Estate of Mills,* 137 Cal. 298, 303 [70 P. 91, 92 Am.St. Rep. 175]; *Knoch* v. *Haizlip,* 163 Cal. 146 [124 P. 998].)

Appellants contend that the water contract was executed for the specific purpose of enabling defendants to procure a loan on lot 6 and that their rights to the water from lot 2 for use on lot 6 had been established by over 30 years of adverse enjoyment. That contract specifically provided that it was made for the purpose of creating a water right for the benefit of lot 6. But since it supplanted all prior existing water rights in lot 2, if any, its cancellation erased all bases for claims on the water of lot 2 for use on lot 6.

The contention that they are entitled to resume the use of the water which they had enjoyed in former years under the ownership of Mrs. Fryer is overcome by the restrictive terms of the several deeds to the children.

The authorities cited by appellants to the effect that they had acquired a prescriptive title to the water developed on lot 2 do not support their contention. It is of no moment in this case that a quitclaim deed to rights previously acquired by grantees does not confer additional rights, as held in the *Mt. Shasta Power Corp.* v. *McArthur,* 109 Cal.App. 171, 178 [292 P. 549]. The Wutchumna case (*Wutchumna Water Co.* v. *Ragle,* 148 Cal. 759 [84 P. 162]) does not support appellants' argument. The defendant there had an agreement with plaintiff's predecessor for the diversion of the water used, and it had been enjoyed adversely, notoriously and uninterruptedly for more than five years. While

Mrs. Fryer had permitted William to use the water on lot 6 for many years, he was required to pay certain operating expenses as did other neighbors who used the water, and during the same period William worked for his mother in caring for her lands. After the old well had caved in and water was no longer supplied to the neighbors from the new well, William paid his mother the operating expenses of the plant for the privilege of irrigating his orchard on lot 6. In view of William's testimony that the water was used from lot 2 on his lands with the express permission of his mother, it cannot with reason be contended that his taking of the water was an act hostile to her title. Nothing to the contrary is contained in the authorities cited by appellants. (*American Co.* v. *Bradford,* 27 Cal. 360, 361, 368; *Gurnsey* v. *Antelope Creek & Red Bluff Water Co.,* 6 Cal.App. 387 [92 P. 326]; *Hudson* v. *Dailey,* 156 Cal. 617 [105 P. 748]; *Moore* v. *Clear Lake Water Works,* 68 Cal. 146 [8 P. 817]; *Heilborn* v. *Fowler Switch Canal Co.,* 75 Cal. 426 [17 P. 535].) The case of *Copeland* v. *Fairview Land & Water Co.,* 165 Cal. 148 [131 P. 119] does not support appellants' claim and is readily distinguished.

An attempt is essayed to establish a right in defendants to use the water from lot 2 on lot 6 under the doctrine of correlative rights. Under this point they cite *Katz* v. *Walkinshaw,* 141 Cal. 116 [70 P. 663, 74 P. 766, 99 Am. St. Rep. 35, 64 L.R.A. 236] as announcing the doctrine that while percolating waters are part of the land and belong to the owner, the water may be used by him on lands adjoining and overlying the source of supply to a reasonable extent provided that it does not injure those who have the same rights in the common source. Their contention is that since lot 6 is a part of tract 2154 and overlies the common reservoir, it is entitled to use the water from lot 2. There are two answers to this contention: (1) It was not proved by appellants that the water which has its source beneath the lots 1, 2, 3, and 4 is the same as the waters which percolated under lot 6. If it had been so established, in the absence of contractual relations the owner of lot 6 would be within his rights in developing and using water from the common pool. (*Burr* v. *Maclay Rancho Water Co.,* 160 Cal. 268 [116 P. 715].) (2) However, even though such proof of a common reservoir had been made, the parties, by the deeds from Mrs. Fryer and by the water contract, established their respective rights to the waters de-

veloped on lot 2. It follows that the doctrine of correlative rights is unavailing to appellants.

Appellants deem themselves to be aggrieved by that portion of the judgment which provides that the expense of maintaining the water tank on lot 2 should be borne by the parties in equal shares. They contend that because respondents now own an undivided two-thirds interest in the tank, two-thirds of such expense should be borne by respondents and that the cost of operation should be based upon the hourly use made. But the tank is used for only lot 1, owned by respondents, and lot 2, owned by appellants, and is not used on lots 3 or 4.

The judgment is affirmed.

Wood (W. J.), J., and McComb, J., concurred.