[No. 2,331.]

WILLIAM THOMPSON *v.* F. L. A. PIOCHE ET AL.

ATTORNMENT OF TENANT TO A STRANGER.—The attornment of a tenant to a person other than the landlord, is void as to the landlord, unless such attornment is with the consent of the landlord, or in consequence of a judgment or decree of some Court of competent jurisdiction.

IDEM.—The tenant cannot, without the consent of the landlord, or without the judgment of some Court of competent jurisdiction authorizing it, destroy the relation of tenancy between himself and his landlord by attorning to another person, even to the owner of the land.

POSSESSION OF TENANT NOTICE OF TITLE OF HIS LANDLORD. — Although the possession of the tenant is not, of itself, notice of the title of the landlord, yet such possession is sufficient to put a person dealing with the property upon inquiry, and is proof of notice, unless it is shown that the inquiry, after having been prosecuted with due diligence, did not disclose the title of the landlord.

WHEN POSSESSION OF TENANT NOT NOTICE OF TENANCY.—If the tenant is in possession of the land, and the party dealing with it makes due inquiry, and such inquiry fails to disclose the fact of the tenancy, the party making the inquiry is not chargeable with the notice of the tenancy.

RUNNING OF STATUTE OF LIMITATIONS.—If the tenant is in possession of the land, under an agreement with his landlord to deliver him possession upon ten days notice, and the owner of the legal title, without knowledge or notice of the tenancy, after due inquiry, executes a lease to the tenant, the possession of the tenant, after the execution of such lease, and while the landlord has no knowledge of the tenancy, is not of such an adverse character as to keep the Statute of Limitations running in favor of the landlord, and against the owner.

WHAT ADVERSE POSSESSION SETS STATUTE OF LIMITATIONS IN MOTION. To constitute an adverse possession, so as to set the Statute of Limitations in motion, the occupation of the one holding adversely must be open and notorious, under a claim of right, and the person against whom it is held must have knowledge, or the means of knowledge, of such occupation and claim of right.

IDEM.—A clandestine entry or possession will not set the Statute of Limitations in motion.

WHAT DOES NOT CONSTITUTE ADVERSE POSSESSION.—If the owner of the land finds one in possession of it who is the tenant of another, and due inquiry does not disclose to the owner the fact that such possessor is the tenant of another, and then, without notice of such tenancy, the owner makes a lease to such tenant, he does not, by such lease, acquiesce in the adverse possession of the undisclosed landlord so as to keep the Statute of Limitations in motion in favor of such landlord.

WHAT REQUIRED TO CONSTITUTE ADVERSE POSSESSION.—There must be both knowledge of, or the means of acquiring knowledge of after due inquiry, and acquiescence in the adverse possession of another, in order to subject the owner of the land to the bar of the Statute of Limitations.

APPEAL from the District Court of the Fourth Judicial District, City and County of San Francisco.

The defendants, of whom there were several, were in possession of separate parcels of the demanded premises, and answered separately.

In November, 1855, the plaintiff left the City and County of San Francisco, and engaged in business in the Counties of Fresno and San Joaquin, more than one hundred miles from San Francisco, and did not return to San Francisco until February, 1863.

The plaintiff had judgment in the Court below and the defendants appealed.

The other facts are stated in the opinion.

*John B. Felton,* for Appellants.

The adverse possession which is necessary to set the Statute of Limitations running, must be open and notorious. Such possession as the plaintiff Thompson had from December 31st, 1857, was secret and hidden, and consequently not such an adverse possession as the Statute of Limitations required.

In discussing this point, we must separate the actual possession, that of Osborne, from the constructive possession, that of Thompson. It is very clear that Thompson, from his distant permanent residence, exercised no control over the land whatever, and that no one could suspect that he had any connection whatever with the land. The most energetic, careful owner would have had no reason to suppose that it was necessary in order to get into his own land to obtain the consent of a person permanently residing in Stockton, and who never came near the land.

On the other hand, the actual possession of Osborne, through which alone the plaintiff can claim, so far from being apparently adverse to the real title, was asserted by the actual possessor to be in subordination to the real title. So that we have the case of a secret constructive possession, which no care or vigilance could detect, and a real possession under a distinct, solemn recognition of the true title. Neither, then, the real or the constructive possession was openly or notoriously adverse to the title of defendants.

The Statute of Limitations, when it takes the land of one and gives it to another, does so upon the ground either that the real owner, by his laches in enforcing his rights has forfeited the protection of the law, or else upon the ground that by allowing another to constantly trespass upon his rights he has acquiesced in such trespass. In Angel on Limitations, Sec. 392, p. 392, ed. 1861, the law is laid down as follows:

"The occupation must, in fact, be visible and notorious, inasmuch as the statute, as has been heretofore several times stated, proceeds upon the ground that there has been an acquiescence on the part of the owner of the land, a ground of supposition which can never exist, if an occupation can be so clandestinely taken as not to afford notice of the same."

It is necessary also in examining this point, to separate the possession of Thompson, as found by the findings, into two divisions—the first embracing his possession prior to December 31st, 1857, the date of the issuance of Bernal Patent; second, embracing such possession as he had while residing in Fresno and San Joaquin Counties, subsequent to the 31st day of December, 1857, the date of the patent.

It is clear that his possession prior to the date of the patent had no effect whatever of setting the Statute of Limitations in motion, for the statute only began to run at the date of the patent. Whatever real possession he may have had from 1851 to 1856 has no bearing upon the present question. Whatever claim he has rests simply on the fact of the hidden, unascertainable connection between him and Osborne subsequent to the 31st day of December, 1857. Now, applying the principle above laid down to the case at bar, what pretext can there be for holding that the Statute of Limitations ran in favor of Thompson?

Did Thompson intend, after the 31st day of December, 1857, to claim that land? If he did, he manifested it by no outward or visible act. He did nothing on the land after that time; he wrote to no one about it; he communicated with no one about it. Whatever intention he had with regard to the land was confined in the recesses of his own mind. To use the language of the Supreme Court of the State of New Hampshire: "The possession claimed was so completely secret that it existed only in his mind and imagination." (*Riley* v. *Jameson*, 3 New Hampshire, 23.)

For the purpose of the Statute of Limitations, the plaintiff's constructive possession can only be coextensive with the actual possession of his tenant. As he claims through the actual possession of the tenant, he must take such actual possession with all its incidents and circumstances, and inasmuch as Osborne's actual possession was not adverse to the title of defendants, neither can Thompson's constructive possession, by reason of the actual possession of Osborne, be adverse to the title of the defendants.

The doctrine of constructive possession rests upon the fact that a person is in possession when another holds the land for him. The person actually holding the land becomes the agent, for that purpose, of the person for whom he holds, and it is only to the extent of the possession thus held by the agent that his principal can be said to be in possession at all. Thus, if Osborne had left this land, the possession of Thompson would have ceased; so, also, if Osborne's actual possession were secret, or not continuous, or not exclusive, the constructive possession of Thompson would be the same. By a like reasoning, if Osborne disclaimed to the real owner that his possession was adverse to him, such disclaimer would take away from the constructive possession its adverse character, precisely as if Osborne, being the tenant of Thompson, failed to inclose the land by a substantial inclosure, or failed to cultivate, he would thereby render the constructive possession insufficient to support the Statute of Limitations.

The declaration of Osborne that he held this land for himself; his silence as to the lease from Thompson, and his taking a lease from Moss, were either intended as a fraud upon Moss, for the purpose of inducing him to leave Osborne in possession, or else Osborne supposed, from the long silence of Thompson, that he (Thompson) had abandoned the land, and Osborne, therefore, in good faith, asserted his own independent claim to the land. In either case, the conduct, acts,

and declarations of Osborne misled Moss into accepting him as a tenant, and it is a fraud upon the part of Thompson to attempt to take advantage of the deceit practiced upon Moss.

*Haight & Temple*, for Respondents.

[No brief on file.]

By the Court, RHODES, J.:

This is an action of ejectment to recover the possession of a tract of land situated in the City and County of San Francisco. The facts of the case, briefly stated, are as follows: The plaintiff entered upon the land in 1850, and between that time and the Winter of 1853–54, he inclosed and occupied the entire premises, and continued to occupy the same in person until November, 1855, when he leased the same to Osborne for the term of ten months. Osborne entered under the lease, but before the expiration of the term he agreed to hold the premises during the pleasure of the plaintiff, and to deliver the possession to the plaintiff, within ten days after notice. The second agreement will be assumed, for the purposes of this case, to be a lease.

The premises are a portion of a tract of land which had been granted by the Mexican Government to José Cornelio Bernal. The claim of Bernal was presented to the Board of Land Commissioners, and such proceedings were had in the matter, that the title was confirmed, and in pursuance thereof a patent was issued to the heirs of Bernal, on the 31st of December, 1857. During the months of September, October, and November, 1859, J. Mora Moss owned the premises under title derived from the patent, and the defendants derive their title from Moss. About the 1st of November, 1859, Moss notified Osborne that he (Moss) held

the title to the premises under the patent, and would pro-. ceed against him (Osborne) to recover the possession of the premises, and thereupon Osborne took a lease of the premises from Moss, and remained in possession, and Moss forbore to turn him out of the possession, because of the lease. Moss had no knowledge that plaintiff had been in possession of the premises, or claimed the same, or that a lease had been made between plaintiff and Osborne, except such as may be inferred from the possession of the plaintiff and Osborne, as above stated. Osborne, when applied to by the agent of Moss, in respect to the possession, stated that the plaintiff had gone off years ago, and that he, Osborne, claimed the land, and was in possession thereof. In 1860, the vendees of Moss executed a lease for a year to Osborne, and he thereafter remained in possession until some time in August, 1863, when he surrendered the same to the plaintiff. The plaintiff subsequently, and within five years before the commencement of this action, was ousted by certain of the defendants.

The questions presented for decision are: First—Was Osborne, from the time of his entry up to the time when the plaintiff reëntered in 1863, the plaintiff's tenant? Second—If Osborne was such tenant during that time, was the possession which the plaintiff held, by virtue of such tenancy, adverse in a legal sense, to those holding the title to the premises under the patent, from the date of the lease of Moss to Osborne, up to the reëntry of the plaintiff?

The defendants contend that the threat of Moss, while he held the title, to sue Osborne for the recovery of the possession of the premises, and the taking of a lease from Moss by Osborne, amounted to an eviction of the latter. Upon this question the defendants cite only one case—*Merriman* v. *Bourne*, 9 Wal. 600). It is there said that " if the tenant be evicted, he may take a new lease from the party evicting him. It has been held that if threatened with suit upon a

paramount title, the threat under such circumstances is equivalent to eviction. He may thereupon submit in good faith, and attorn to a party holding a valid title, to avoid litigation. In such case it is incumbent on him and those who have profited by his admission, to show the existence and superiority of the title in question;" and several cases are cited by the Court in support of that doctrine. The finding of the Circuit Court does not state the precise dates at which the several attornments were made, but it would seem that they were prior to the passage of the Act of this State of April 27th, 1855, supplementary to and amendatory of the Act concerning conveyances (Stats. 1855, p. 171), as that Act is neither cited by counsel nor considered by the Court. The seventh section of the Act is as follows: "The attornment of a tenant to a stranger shall be void, unless it be with the consent of the landlord of such tenant, or in pursuance to, or in consequence of, a judgment or decree of some Court of competent jurisdiction." Here the attornment was after the passage of the Act, and it comes within, and is made void by, the seventh section. Whatever may be the rule at common law, it is clear that the statute must prevail. The attornment of Osborne being declared void by the statute, and there being nothing in the case showing that the relation of landlord and tenant subsisting between the plaintiff and Osborne had been determined before the reëntry of the plaintiff, Osborne will be regarded in law, during the time of his occupation of the premises, as the plaintiff's tenant. The statute declares such attornment void—that is to say, void as between the landlord and tenant, but it is not necessarily void between the tenant and the party to whom he attorned. For all the purposes of the relation of landlord and tenant, and in order to sustain the rights growing out of that relation, and to afford a remedy for their violation, Osborne will be deemed the tenant of the plaintiff.

The next question is not free from difficulty. No case is brought to our notice, in which a party relied upon adverse possession, which was held under circumstances similar to those which are presented in this case. The Court found that Moss had no notice of the lease from the plaintiff to Osborne, other than may be inferred from the possession of the plaintiff and Osborne, as already stated. There is no evidence that he knew of the possession of the plaintiff, nor even that he, Moss, had any connection with the title, before the date of the patent.

But it is said that the possession of Osborne was notice of the title of his landlord, the plaintiff. It was so held in the cases cited by the plaintiff, and in other cases in this Court. (*Dutton* v. *Warschauer*, 21 Cal. 628; *Landers* v. *Bolton*, 26 id. 419.) And the rule is the same, whether the premises are in the actual possession of the person claiming title or of his tenant; and the rule is usually stated in general terms, that the possession of such party is notice of his title. We had occasion, in *Fair* v. *Stevenot*, 29 Cal. 488, and *Smith* v. *Yule*, 31 Cal. 182, to analyze the rule, and ascertain with precision its true scope and purpose. It was there held, and we think correctly, that such possession was not of itself notice, but that it was sufficient to put a person dealing with the property upon inquiry, and that it would be proof of notice, unless it be shown that the inquiry, after having been prosecuted with due diligence, did not disclose the title of the person in possession. When it is claimed that the person in actual possession is holding as a tenant, this rule will apply as well to the fact of the alleged tenancy, as to the title of the landlord. If the inquiry was duly pursued, and the fact of the tenancy was not disclosed, the party making the inquiry is not chargeable with notice of the tenancy. In this case Osborne, when applied to by Moss in respect to the possession, stated in substance that he was in possession in his own right, that he claimed the premises, and nothing

was said which even intimated that he held the possession
under the plaintiff. When the agent of Moss stated that the
plaintiff had formerly been in the possession of the premises,
Osborne replied that the plaintiff had gone off years ago,
and that he, Osborne, now claimed the land. That informa-
tion might point to a sale or abandonment of the premises
by the plaintiff, but not to an existing tenancy between him
and Osborne. We are of the opinion that Moss duly pur-
sued the inquiry which was incumbent on him, because of
the possession of Osborne, and that as the inquiry did not
disclose the tenancy of Osborne, Moss is not chargeable with
notice of that fact.

Osborne having accepted a lease from Moss under the cir-
cumstances already mentioned, and having continued in pos-
session thereafter up to the time of the entry of the plaintiff,
in 1863, the question arises whether the possession was of
such a character, after the time when the lease was executed
by Moss, as would keep the Statute of Limitations running
against the parties holding title under the patent. To con-
stitute adverse possession, the occupation must be open, visi-
ble, notorious, and exclusive, and must be retained under a
claim of right to hold the land against him who was seized;
and the person against whom it is held must have knowl-
edge, or the means of knowledge, of such occupation and
claim of right. Such knowledge, or the means by which
such knowledge may be attained, must be brought home to
the person who was seized or possessed of the land; because
the statute proceeds on the ground that he, knowing that a
cause of action exists in his favor for the intrusion, yet acqui-
esces in it, and does not attempt to regain the possession of
his land in the mode provided by law. (Aug. Lim., Secs.
391, 398; 2 Wash. on Real Prop. 490.) A clandestine entry
or possession will not set the statute in motion, because the
owner of the land cannot be said to have acquiesced in the
wrongful entry or possession. The owner will not be con-

demned to lose his land because he has failed to sue for its recovery, when he had no notice that it was held or claimed adversely; but the statute cuts off his remedy only when he has *neglected* to commence his action beyond the period assigned for it.

Moss, as already remarked, had no notice that any one, other than Osborne, claimed any adverse right in the land; and he might have commenced an action against Osborne for the recovery of the possession; but it cannot be said that because he failed to do so, and instead thereof attempted to make Osborne—the only person who apparently claimed adversely to him—his tenant, and thus regain the constructive possession, he thereby acquiesced in the adverse possession of the undisclosed landlord of Osborne. It cannot be said that Moss neglected to assert his title against the plaintiff, when he had no means of knowing that the plaintiff claimed anything in the land. There is no rule of law that forbade him to accept as a tenant the only man who, so far as he knew, claimed adversely to him, and compelled him to eject, by suit or otherwise, the person in possession, under the vague suspicion that he might be the tenant of some undisclosed landlord. To illustrate the soundness of the rule that there must be both knowledge of and acquiescence in the adverse possession, in order to subject the owner to the bar of the statute, it may be supposed that Moss, desiring to personally occupy the premises, and wishing to avoid the expense and delay of a suit, had " bought off " Osborne, and the latter had then quit the possession, and Moss had thereupon entered. Moss would thereby have become the tenant of the plaintiff, and if the rule above stated be not correct, his actual possession would have become, by construction of law, adverse to his own title.

We are of the opinion that the evidence failed to bring home to Moss notice of the plaintiff's claim to the land, and that the possession of the plaintiff, through his tenant, after

the attornment of the latter to Moss, was not adverse, in a legal sense, to the title of Moss and those claiming through him, so as to keep the Statute of Limitations running.

Judgment and order reversed, as of April 2d, 1872, and cause remanded for a new trial.