[Civ. No. 335.   Third Appellate District.—September 7, 1907.]

## W. H. GURNSEY, Respondent, v. ANTELOPE CREEK AND RED BLUFF WATER COMPANY, Appellant.

WATER RIGHTS—ADVERSE USE—TITLE BY PRESCRIPTION—SUPPORT OF FINDING.—In an action to determine plaintiff's title to a water right for the purpose of watering stock and domestic animals on his premises, where plaintiff relies upon adverse user for that purpose for eleven years and a title by prescription, and the court found in favor of such right, where there is substantial evidence of every element of adverse use, the finding of the court below is controlling.

ID.—KNOWLEDGE BY DEFENDANT OF ADVERSE USE.—Where the facts proved justified the court in reaching the conclusion either that the defendant had knowledge of the character and extent of the use

by plaintiff and his predecessor of the water, or that it was put upon inquiry and might have known it by ordinary care, the finding of use adversely to the defendant is sufficiently supported.

ID.—CIRCUMSTANTIAL EVIDENCE—NOTORIOUS POSSESSION—CLAIM OF ADVERSE POSSESSION—PRESUMPTION OF KNOWLEDGE.—Direct evidence of knowledge on the part of the defendant is not required, and the circumstances may be sufficient to justify the finding of the court, No particular act or series of acts is necessary in order that the possession may be notorious, but any visible act which clearly demonstrates an intention to claim ownership and possession will be sufficient to establish a claim of adverse possession, which may be made out without any assertion by word of mouth. When the use is not secret or clandestine, but open, visible and notorious, the presumption of knowledge follows, and this presumption applies to a corporation as well as to a private person.

ID.—BURDEN OF PROOF.—The burden was first upon the plaintiff to prove his title by prescription to use of the water for the watering of stock as claimed, and upon proof of a *prima facie* case of adverse use thereof for more than five years, it devolved upon the defendant to show that the use was permissive, or without the knowledge of the defendant.

ID.—JUDGMENT AS TO DOMESTIC USE UNWARRANTED—MODIFICATION.—Where there was no finding that the use of the water for domestic purposes by plaintiff's predecessor, under contract with the defendant, was appurtenant to the land, or was granted to him by his predecessor, and there was no finding upon an issue that the privilege granted by the defendant was personal to plaintiff's predecessor, a general finding that plaintiff was entitled to the domestic use of the waters, not showing any prescriptive right thereto, is unsupported, and a judgment awarding to him said right in addition to the prescriptive right to water stock awarded to him is too broad, and must be modified by striking out the domestic use of the water.

APPEAL from a judgment of the Superior Court of Tehama County, and from an order denying a new trial. J. F. Ellison, Judge.

The facts are stated in the opinion of the court.

Jno. J. Wells, and Elliott McAllister, for Appellant.

P. H. Coffman, for Respondent.

BURNETT, J.—The controversy relates to a water right claimed by respondent.

In 1877 one James Wilson entered into a written contract with the Antelope Water Company, the predecessor in interest of appellant, containing the following provision: "That whereas the said party of the second part is about to bring the waters of Antelope Creek in the said county and state into the town of Red Bluff for the purpose of supplying the inhabitants thereof with water and desires to cross the lands of the party of the first part, and in consideration of that privilege proposes to allow him one-half inch pipe of water to be attached to said pipes at any place he may designate and the water taken by said half-inch pipe to be used only for the necessary household purposes and the irrigation of a small garden and vegetable patch . . . and the said party of the first part having accepted the said proposition and consented to the laying of the said pipes as aforesaid: In consideration of the premises, does grant, give and convey to the said party of the second part the right and privilege of laying down the said water-pipe across his lands." The water-pipe was laid across said lands and it has been maintained and used ever since. Wilson in 1878 began using the water at his house, which was south of the county road, and later he purchased land on the north of the road and about 1885 continued the pipe to said north side and began using it there. Both points were on an extension of the one tap at the main pipe line. On the north side the water has been used continuously ever since 1885 for the watering of stock. On the south side the water was used for a time for household purposes, irrigation and the watering of stock. Plaintiff purchased the Wilson land in 1893 and then tore down the buildings on the south side of the road and since then the water there has been used exclusively for stock. September 1, 1904, the appellant removed respondent's half-inch connection from the main pipe-line, and the suit was brought for an injunction to compel its restitution and to restrain appellant from interfering with respondent's use of the water.

The main contention is over the question whether the evidence supports the following finding of the court: "That for about eleven years last past, and up to September 1, 1904, the plaintiff attached to the said water main a one-half inch water-pipe, on the said lands; and, for and during the said eleven years, by and through the said half-inch water-pipe, the plaintiff has openly, notoriously and peaceably and ad-

versely to the defendant and to the whole world, claiming all the time to be the owner of the right to take and use, and has continuously taken and used the water flowing in the said water mains and pipes for the purpose of watering livestock and domestic animals on the said lands and premises . . . and the plaintiff is now and was on the first day of September, 1904, the owner of the right to take and use the water in the said water mains, through a half-inch pipe attached thereto, for the purpose of watering livestock and domestic animals on the said lands and premises.''

There is no conflict in the evidence. The parties disagree, however, as to whether that evidence justifies the conclusion that the use of the water for stock for so many years by plaintiff and his predecessors has been *adverse* so as to clothe plaintiff with a title by prescription. Appellant takes the position that since it was not shown that it had *actual* knowledge of the enlarged use of the water such use must be deemed to be permissive only and not under a claim of right. On the other hand, it is respondent's contention that whatever may be the meaning of the said written agreement of 1877 by reason of the manner in which the water has been used for so many years, his right to a sufficient flow for stock purposes is as unquestionable as though resting in express grant. If there is any substantial evidence of every element of adverse use the finding of the court below is controlling. (*Thomas* v. *England,* 71 Cal. 456, [12 Pac. 491]; *Humphreys* v. *Blasingame,* 104 Cal. 40, [37 Pac. 804]; *Abbott* v. *Pond,* 142 Cal. 394, [76 Pac. 60]; *Franz* v. *Mendonca,* 146 Cal. 640, [80 Pac. 1078].)

The important facts disclosed by the evidence are as follows: Wilson, when owner of the property, used the water for stock in the corrals and barn near the road on the south side and in troughs on the north side about seventy-five feet from the road. The fields on the north and south sides of the road are and at all the time in controversy have been so connected as to allow stock to pass readily from one to the other when the gates are open. After Gurnsey removed the house, barn and corrals he used a trough and hydrant on the south side right against the fence for watering stock and on the north side at the end of a one-half inch service pipe about seventy-five feet from the road. All kinds of livestock were running and pasturing in these fields and watering at these

points for about twenty years. The respective owners of the property turned the water off and on and used it as they pleased. The water overflowed the trough on the north side of the road and formed a pond or "wallow" for the hogs. This could be seen by everyone who passed along the road or up or down the water mains. At the trough on the south side of the road Gurnsey maintained a "float" to check the flow of water when the trough was filled. Sometimes people interfered with this and water would overflow the trough and run down the road.

We think from the foregoing facts the court was justified in reaching the conclusion either that the defendant had knowledge of the character and extent of plaintiff's use of the water or that it was put upon inquiry and might have known if it had exercised ordinary care. Indeed, there is positive testimony of plaintiff that "the employees of the water company passed up and down those lines of water mains at different times for the purpose of examining and caring for them. They have done that ever since I have owned the property." The grade of their employment is not disclosed, but it is quite improbable that there were not included therein those who by reason of the rank of their position must be held to represent the company in the premises. It is incredible that the water could have been used openly and continuously as it was, in view of the highway, for twenty years without the knowledge of appellant. This was undoubtedly the view taken by the trial court. Direct evidence of knowledge on the part of defendant was not required. The circumstances were sufficient to justify the finding of the court. No particular act or series of acts is necessary to be done in order that the possession may be notorious, but any visible act which clearly demonstrates an intention to claim ownership and possession will be sufficient to establish claim of adverse possession. (*Ford* v. *Wilson,* 35 Miss. 490, [72 Am. Dec. 137]; *Royal* v. *Lisle,* 15 Ga. 545, [60 Am. Dec. 712]; *Langworthy* v. *Myers,* 4 Iowa, 18.) Such claim may be made out by visible acts, without any assertions by word of mouth. (*Barns* v. *Light,* 116 N. Y. 34, [22 N. E. 441].) When the use is not secret or clandestine, but open, visible and notorious, the presumption of knowledge follows. (*Thompson* v. *Pioche,* 44 Cal. 508; *Unger* v. *Mooney,* 63 Cal. 586, [49 Am. Rep. 100]; *Montecito Valley Co.* v. *Santa Barbara,* 144 Cal. 597, [77

Pac. 1113].) The same presumptions apply to corporations as to private persons. (*Pixley* v. *Western Pac. R. R. Co.*, 33 Cal. 183, [91 Am. Dec. 623].)

In *Goodwin* v. *Sheerer*, 106 Cal. 695, [40 Pac. 18], the supreme court says: "The possession of land is itself *prima facie* evidence of ownership. . . . If the plaintiff shows that such possession has been continued for a period long enough to bar an action for the recovery he establishes a title by prescription. (Civ. Code, sec. 1007.) Upon such proof the burden is thrown upon the defendant to show that his right to retain the possession has not been overcome." The same principle applies here. The burden is in the first instance upon plaintiff to prove his title by prescription. After showing the continuous occupancy and use of the water as though he were the owner, for more than five years, he establishes a *prima facie* case. It then devolves upon defendant to show that the use was permissive or without the knowledge of said defendant. In the case at bar no evidence whatever was offered by defendant as to knowledge or the character of the use. The conclusion of the court is correct, whether it be regarded as a presumption from long-continued and notorious possession, or we accept the theory that the circumstances were such as to put defendant upon inquiry, or that the evidence was sufficient to establish the fact of knowledge. It is true that there is no specific finding as to knowledge, but we understand that is not necessary but it is implied in the language in the finding, "openly, notoriously and peaceably and adversely to the defendant and to the whole world, claiming all the time to be the owner."

It makes no difference if we assume that the use of the water on the north side of the road or for watering stock is an enlargement of or an addition to the use granted by the said instrument of August 13, 1877. The same result will follow. In *Robinson* v. *Thornton*, 102 Cal. 682, [34 Pac. 120], it is said: "The grantee does not by his entry assume any obligation toward his grantor, nor is there any relation of trust or confidence between them, which is forfeited by his repudiation of the title under which he entered or by his acquisition of another outstanding title. By entering under the title he assumes it to be *prima facie* good, but he is not estopped thereby from showing in any controversy another

and independent title in himself." (See, also, *Woodward* v. *Faris,* 109 Cal. 12, [41 Pac. 781].)

In *Wheatley* v. *Chrisman,* 24 Pa. St. 298, [64 Am. Dec. 657], a question similar to the one before us was considered. It is there said: "The principal stress of the argument before us by the counsel of either side was on the question whether a person to whom an easement like this has been granted by a deed for a specific purpose may use it for twenty-one years for a different purpose and then claim a right by prescription to the whole extent of the user. . . . When an easement is granted for one purpose and the grantee exercises the right mentioned in the deed, and another right also, he is not less secure against all interruptions of either than he would have been if no express grant at all had been shown. It is as easy to presume another grant for watering horses, super-- added to that of watering meadows, as it would have been in the absence of any deed to presume there was a grant for both together."

We think there is sufficient evidence to show that the use of the water for watering stock was open, notorious, continuous and under a claim of right for more than five years, but the judgment is more comprehensive than the findings of the court and it is necessary to modify it. The judgment decrees that the plaintiff "is the owner of the right to continuously and uninterruptedly take from the water mains and pipes of the defendant . . . the water therein, by and through a one-half inch water-pipe attached to the said main water-pipe on said lands, and to continuously and uninterruptedly use the said water . . . for watering livestock on all the lands above described, and for household and domestic purposes and for the irrigation of a small garden and vegetable patch on all the said lands, except the East half of the South-east quarter of said section fifteen." Plaintiff established a prescriptive right to the use of the water for stock purposes, and it is so found, but there is no evidence and no finding that he acquired any such right to use the water for household or domestic purposes or for irrigation. There is a finding "That the said James Wilson, on or about the year 1878, did attach to the said mains a half-inch water-pipe; and thereafter and down to the year 1893, to the time the said plaintiff became the owner of the said lands and premises, the said James Wilson and his grantees did openly, continuously and unin-

terruptedly take and use the water on the said lands and premises from and through the said water mains and pipe for livestock, *household and domestic purposes, and for the irrigation of a small garden and vegetable patch.*" But there is no finding by what authority or under what claim the water was used for *household and domestic purposes* and for irrigation. The finding does not contain all the elements of adverse use; and assuming that in connection with finding No. 4 it appears inferentially that Wilson was entitled to the use of the water for such purposes there is nothing to connect the plaintiff with such right. There is a finding that plaintiff succeeded Wilson in the ownership of the lands and premises, but there is no finding that the water right was appurtenant to the land nor of any conveyance by Wilson of any such right, assuming that said right was transferable. The answer raised the issue that the right created by the said agreement of August 13, 1877, was permissive and personal to Wilson. In the absence of any finding as to this the judgment is broader than is warranted.

. There was some evidence of waste of water on plaintiff's premises. This, of course, should not be allowed. Nor should plaintiff permit the water to flow when not necessary for the purposes mentioned in the judgment. In the rainy season there is an abundant supply in the slough for plaintiff's uses and he should avail himself of it. It is not necessary, however, to modify the injunction in these respects, as suggested by appellant, as we understand from the language used that appellant is not restrained from preventing waste. The words "and for household and domestic purposes and for the irrigation of a small garden and vegetable patch on all the said lands except the East half of the South-east quarter of said section fifteen," found in folio 91 of the transcript, and the words "household and domestic purposes and for irrigation," found in folio 93 of the transcript, and the words "household and domestic purposes and for irrigation," found in folio 95 of the transcript, are stricken from the judgment, and as thus modified the judgment and order denying the motion for a new trial are affirmed.

Chipman, P. J., and Hart, J., concurred.