[Civ. No. 1343.   Second Appellate District.—June 19, 1913.]

NANCY CHEDA, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), et al., Respondents.

WATER-RIGHTS—PRESCRIPTIVE RIGHTS—CHARACTER OF USER.—Where a riparian owner diverts water from a stream openly and notoriously for a period of five years, while a lower riparian owner has knowledge or means of knowledge thereof, but makes no objection, he thereby acquires a prescriptive right to use the amount of water thus diverted.

ID.—CHANGE OF POINT OF DIVERSION.—That the point of diversion was changed from one tributary of the stream to another tributary is

not material, so far as concerns the riparian proprietor below the junction of the tributaries, when no easement rights as affecting specific real property are involved, as distinguished from rights acquired by appropriation and user of the water.

ID.—EXTENT OF USER MUST BE CLEARLY ESTABLISHED.—The extent to which the prescriptive right is claimed and awarded should be made clear, to the end that the party should not be awarded any amount of water or of land in excess of that which was actually used openly, notoriously, and adversely.

ID.—AMOUNT OF WATER USED—FINDINGS AND JUDGMENT.—If there is a finding that the defendant used twenty-eight thousand gallons daily for over five years, and another finding that he used less than twenty-eight thousand gallons daily, and the answer alleges that nine thousand gallons or thereabouts were used, a judgment awarding the defendant the use of twenty-eight thousand gallons daily is unwarranted.

APPEAL from a judgment of the Superior Court of San Luis Obispo County and from an order refusing a new trial. E. P. Unangst, Judge.

The facts are stated in the opinion of the court.

Wm. Shipsey, for Appellant.

W. H. Spencer, for Respondents.

ALLEN, P. J.—The action was one by plaintiff to restrain the defendants from obstructing or continuing to obstruct a certain creek, and from diverting water therefrom, and for damages. The facts are these: Plaintiff is the owner of a tract of land in San Luis Obispo County through which Stenner Creek runs. This Stenner Creek is a stream formed from various tributaries, the two principal ones arising at certain springs, one thereof from Serrano spring and the other from Dyer spring. Dyer spring is situate upon land owned by the defendant corporation, and from it a stream flows through defendant's lands and those of other proprietors until its junction with the waters flowing from Serrano spring, from which point the stream is known as Stenner Creek. Plaintiff's land lies below the junction and below lands belonging to one Herrera. The defendant corporation, in the year 1894, built a dam and commenced the

diversion of water from the tributary flowing from Serrano spring, and continued the use of this water for purposes other than that of irrigation from that date until 1903, at which time, having acquired the lands upon which Dyer spring is situated, it abandoned the rights acquired below Serrano spring and commenced the diversion of water arising from Dyer spring for use other than for irrigation. This last-mentioned flow of water, like that from Serrano spring, if unobstructed, would flow down and become part of the waters of Stenner Creek. Plaintiff as a riparian owner was entitled to a reasonable use of the waters of this last-named creek. In her complaint she alleged that the water diverted by defendants varied daily, but that it had always amounted to between three hundred thousand and four hundred thousand gallons each day; that the result of such diversion by defendants has been to deprive her land of waters necessary for domestic use and for irrigation. Defendant corporation in its answer admitted its diversion and use of water, as alleged, but denied that it used at any time in excess of eight thousand five hundred gallons a day. In another portion of the answer it is stated that the extent of the use of the water was at least nine thousand gallons a day. The trial court found that for more than five years previous to the commencement of the action—that is to say, from March, 1894, to November 15, 1903—the defendant corporation continuously, uninterruptedly, and adversely appropriated, diverted, and used the waters of said Serrano spring, each and every day during said period, to the extent of twenty-eight thousand gallons; that in 1903 the defendant released all the waters of said Serrano spring before used by it, and ever since said date last mentioned all the waters of Serrano spring have been permitted to flow down the creek. By finding 10 it is found that on November 15, 1903, the defendant by dams diverted the water from the stream flowing from Dyer spring and converted, carried away, and consumed a quantity of water less than twenty-eight thousand gallons per day, in addition to some other water which the court finds it had no right to use. In another finding the court finds that from November, 1903, the defendant has appropriated, used, and diverted from said springs continuously, uninterruptedly, and adversely the waters flowing from said Dyer spring to the extent specified

in finding 10, to wit, twenty-eight thousand gallons every day. The court by its judgment enjoined the defendant from taking from said stream flowing from Dyer spring any water in excess of twenty-eight thousand gallons each day, and gave judgment for $233.33 damages on account of other water taken and used, without right, to plaintiff's injury. From this judgment, and from an order denying a new trial, plaintiff appeals upon a statement.

Appellant's first contention is that the answer and the findings do not allege or find that the use of the water by defendant had been adverse to plaintiff, and that construing the findings to the effect that the use was adverse to plaintiff, there is nothing in the evidence tending to show that plaintiff had knowledge, or means of knowledge, of such diversion. We are of the opinion that the allegation in the answer of the adverse use is the equivalent of and tantamount to a statement of adverse use as to plaintiff. The acts alleged by defendant, and by the court found, show an open and notorious use and exercise of a right which plaintiff claimed, and plaintiff making no objection thereto, having the knowledge or means of knowledge thereof, the use may be said to be adverse. "After showing the continuous occupancy and use of the water as though he were the owner, for more than five years, he establishes a *prima facie* case. It then devolves upon defendant to show that the use was permissive or without the knowledge of said defendant." (*Gurnsey* v. *Antelope Creek etc. Water Co.*, 6 Cal. App. 392, [92 Pac. 326]; *Goodwin* v. *Scheerer*, 106 Cal. 690, [40 Pac. 18].) That defendant openly and notoriously used water is not disputed, and that plaintiff, the owner, introduced no evidence tending to show want of knowledge upon her part must be conceded. We think that all of the elements of the hostile and adverse use for the period named are fully established.

It is contended further by appellant that the change of the point of diversion in 1903 from the tributary fed by Serrano spring to the tributary fed by Dyer spring was unauthorized under section 1412 of the Civil Code. This contention is based upon the language used by the supreme court in the case of *Hargrave* v. *Cook*, 108 Cal. 72, [30 L. R. A. 390, 41 Pac. 18], where it is said that the rights acquired by one diverting water from a stream located upon the lands of an-

other "are the rights of the grantee of an easement, and extend, in the matter of changing the point of diversion, no further than the boundaries of the servient tenement, . . . as to lands other than those subject to his easement, and as to other claimants and owners, he can make no change at all which injuriously affects them or their rights." In that case, however, the court was considering easement rights as affecting specific real property, as distinguished from the rights acquired by appropriation and user to the waters of a stream. We attach no importance to the fact that the place of diversion was changed from one tributary to another. The rights acquired by the original appropriation and user up to 1903 were in the water supply of the creek, and the water taken from Dyer spring was as much the water supply of Stenner Creek as was that water which flowed from Serrano spring. The case, in our opinion, would have been no different had the point of diversion been changed from the lands on Stenner Creek below the junction to other lands owned by the defendant below such junction. The water and the right to divert and use the same were the things acquired by the prescriptive title. Having acquired that right as against plaintiff, in 1903, no reason occurs to us why defendants might not upon their own lands extract from the same supply an equivalent amount of water. True, by the abandonment in 1903, they relinquished the easement right upon the land then occupied, but did not thereby release the right to go upon their own land and take an equal amount of water from the same source of supply. There is nothing in the record which, to our minds, discloses insufficiency of the evidence to support the finding of the court that the change of the point of diversion was without injury to plaintiff. Appellant's contention, however, that the judgment as to the amount of water actually diverted is not supported by the findings, to our minds, possesses merit. Defendants by their hostile and adverse use of the water of the creek were undertaking to acquire title by prescription in water which plaintiff possessed the right to have flow uninterruptedly down the stream. The extent to which a prescriptive right is claimed and awarded should be made clear, to the end that the party should not be awarded any amount of water or of land in excess of that which was actually used openly, notoriously, and adversely.

The finding of the court that twenty-eight thousand gallons was the daily use from 1894 to 1903 is in direct conflict with the admissions of defendants in their answer. Nor do the allegations of the complaint admit any number of gallons to have been used under claim of right and adversely. A fair construction of the answer with reference to the amount of water used being not less than nine thousand gallons, should be nine thousand gallons or thereabouts, and a party disclaiming any user to an extent above nine thousand gallons or thereabouts should not be permitted to prove thrice that amount; and one of the findings of the court (No. 10) is that they used less than twenty-eight thousand gallons. The findings, as a whole, are inconsistent, and do not clearly determine just what the court meant to find as to the extent of the adverse use. We are of opinion that under the issues as framed, the defendants were restricted to the amount which they claimed to have used. The evidence indicating the use of twenty-eight thousand gallons is exceedingly meager, but, in the absence of defendants' admissions, might be held as some testimony tending to support the finding of the use of twenty-eight thousand gallons. However, considering the whole record, we think that the finding of the court as to the extent of the use is not supported, and the motion for a new trial should have been granted.

Judgment and order reversed, and cause remanded for a new trial.

James, J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 18, 1913,