[Civ. No. 3708.   First Appellate District, Division Two.—February 14, 1921.]

## CHARLES E. PRINGLE, Appellant, v. CITY OF SANTA CRUZ et al., Respondents.

[1] WATER RIGHTS—PRESCRIPTIVE TITLE—BURDEN OF PROOF.—In an action to restrain a city from discontinuance of service of free water wherein the plaintiff claimed a prescriptive title, proof of a continuous free occupancy and use for a period of forty years established a *prima facie* case, and the burden then devolved upon the defendant to show that the use was permissive or without the knowledge of the defendant.

APPEAL from a judgment of the Superior Court of Santa Cruz County. Benj. K. Knight, Judge. Reversed.

The facts are stated in the opinion of the court.

E. C. Kramer and Charles B. Younger for Appellant.

Geo. W. Smith for Respondents.

STURTEVANT, J.—The plaintiff commenced this action to obtain a decree restraining and prohibiting the defendant city from discontinuing his service of free water which he had theretofore received out of a water-main now owned by the city of Santa Cruz. The defendant answered, a trial was had on the merits, judgment went for the defendant, and the plaintiff appealed. The plaintiff claimed a prescriptive title. The court found that the plaintiff's use was open, notorious, uninterrupted, and with knowledge of the defendant, but that it was not hostile. The plaintiff contended, and now contends, that his use was hostile. The sole question involved is this: "Was the finding, that plaintiff's possession was not hostile, supported by the evidence?" The record is very short and contains no conflicts. Prior to 1868 Daniel Ross, the plaintiff's grantor, had owned and occupied certain lands bordering Branciforte Creek, in Santa Cruz County. About 1876 the Santa Cruz Water Company so constructed a water system that it took water out of the creek at a point seven miles above the Ross lands and led the water in flumes and pipes down the stream and piped it across the property of Ross. In 1878 the employees

of the company tapped its pipe on the Ross land and connected a supply pipe of three-fourths of an inch in diameter. Thereafter, and continuously down to the date of the trial, Daniel Ross used that quantity of water on the land described in the plaintiff's complaint. The books of the company thereafter contained, under the heading "Rate," the word "Free." After Daniel Ross had been so using the water for some time the then president of the water company called at the house of Daniel Ross and the occurrence was told by Mr. J. M. Ross in these words: "I heard a conversation between my father and A. W. Bowman concerning the receipt of this water. That conversation took place in the early part of 1880; I don't know just exactly the date. It took place in our front yard, right inside the property. Just as near as I can remember the conversation, father wanted an inch of water instead of the three-quarters, and Mr. Bowman agreed with him that that would be all right. Then he says, 'We will have that in writing,' and Mr. Bowman told him to go over to the office, but, before my father got to the office, Mr. Bowman was called to San Francisco, so it was never put in writing, but Mr. Bowman at that time agreed to give him one inch of water. My father was receiving water through a three-quarter inch pipe at that time." At this point it should be noted that, if Ross was a licensee, enjoying such a bounty, it was quite extraordinary that he should request or demand that his benefactor should increase the extent of the benefaction. If the increase was to be an additional gratuity it was yet more extraordinary that Ross should then request that his benefactor should reduce to writing the extent of the gift.

June 27, 1903, Ross sold the land to the plaintiff by a deed which was immediately recorded in Santa Cruz and which deed contained a clause: "Together with all the water rights and privileges now owned, occupied, and enjoyed by the party of the first part." That clause would indicate that Ross and Pringle each, in turn, claimed the water right as owner. The plaintiff had held the title to the land only about one year when August Hihn, president of the water company, called. The plaintiff described the visit as follows: "They came around and asked me to show my water right, August Hihn did, after I had been there, it was in 1904, and I showed him my deed with the water

right in it and they never bothered me after that." That
incident shows that the water company was advised that the
plaintiff was claiming as owner—as the grantee of Ross.
The incident was sufficient to put the company to further
inquiry. From 1914 to 1916 R. B. Zieber was the collector
of the water company before it sold out to the defendant
city. While so acting he was advised by Mr. Hihn "not to
make any effort to collect from this property, that they
had a free water right." The use, under these circum-
stances, continued over forty (40) years. It was uninter-
rupted. It continued when water was plentiful and when
it was scarce. The plaintiff says: "I had all I wanted to
use at the time water was so scarce, I had plenty of water
to use if I wanted to use it." In addition to the small frag-
ments of evidence contained in the foregoing there are
certain disputable presumptions which we must bear in
mind. As the record was made in the trial court, and as
it stands before us, it shows no debt or obligation at any
time owing by the water company to the plaintiff or plain-
tiff's grantor. On the other hand, from the year 1878 daily
to the date of the trial, the duty rested on the agents of
the water companies to charge and collect all rentals and
account therefor to their stockholders. We must presume
that the water company and its agents ascertained the facts
and did their duty (Code Civ. Proc., sec. 1963, subds. 4
and 15). We must presume that the transaction was not
a gratuity but was based on value received. (Code Civ.
Proc., sec. 1963, subds. 19 and 20.) We must presume
that when the water company acquiesced for forty years
in the plaintiff's free use of the water, such acquiescence
followed from a belief that such use was conformable to
the rights of the plaintiff and to the rights of his grantor.

[1] Let it be conceded that the burden of proving that
his holding was hostile rested on the plaintiff (*Janke* v.
*McMahon,* 21 Cal. App. 781, [133 Pac. 21]), such burden
was met by the testimony hereinabove set forth.

Moreover, when the plaintiff had proved a continuous
free occupancy and use of the water for a period of forty
(40) years as though he were the owner, he established a
*prima facie* case. It then devolved upon the defendant
to show that plaintiff's use was permissive or without the
knowledge of the defendant. (15 Cyc. 125; Code Civ. Proc.,

51 Cal. App.—24

sec. 1963, subds. 11, 12; *Gurnsey* v. *Antelope Creek Water Co.,* 6 Cal. App. 387, [92 Pac. 326]; *Cheda* v. *Southern Pac. Co.,* 22 Cal. App. 373, 376, [134 Pac. 717]; *Davis* v. *Crump,* 162 Cal. 513, 518, [123 Pac. 294].) The finding that plaintiff's possession was not hostile was not supported by the evidence.

The judgment is reversed.

Nourse, J., and Langdon, P. J., concurred.