[Sac. No. 4535.   In Bank.—March 31, 1933.]

MYRTLE M. MORGAN et al., Respondents, v. LEATHA J. WALKER et al., Defendants; LEATHA J. WALKER, Appellant.

Jesse W. Carter and Annette Abbott Adams for Appellant.

608

Fred C. Pugh for Respondents.

CURTIS, J.—Plaintiffs are the owners of a tract of land in Shasta County known as the Childs ranch and brought this action to quiet their title to 200 inches of water of Digger Creek against one M. L. Bouton. Defendant Bouton was a lower riparian owner on said creek, whose lands were situated on the opposite side of Digger Creek from the lands of plaintiffs. Digger Creek forms the boundary line between Shasta and Tehama Counties, and the lands of Bouton were situated in Tehama County. After the commencement of this action, the plaintiffs amended their complaint and included as one of the defendants therein the present defendant, Leatha J. Walker, a lower riparian owner whose lands adjoin those of the plaintiffs. At a still later date the plaintiffs filed a supplemental complaint alleging that since the commencement of this action they had purchased the lands of the defendant Bouton, and finally and on May 26, 1927, the plaintiffs filed a second amended complaint naming as defendants therein the defendants, Leatha J. Walker and Lillie E. Cofer. The last-named defendant, after service of process upon her, defaulted. She has, therefore, no interest in this appeal and it will not be necessary to again refer to her. We will refer to Leatha J. Walker as the defendant. Plaintiffs' second amended complaint consists of four counts, or separate causes of action. In the first cause of action plaintiffs allege that they are the owners of the Childs ranch, together with a water ditch known as the Childs ditch taking water out of Digger Creek, and a right to divert through said ditch 200 inches of water as appurtenant to said lands; and that for more than thirty years last past they and their predecessors in interest had diverted that quantity of water from said stream and had beneficially used the same upon the Childs ranch. In other words, the plaintiffs plead in their first cause of action a prescriptive title to the use of said waters upon their said lands to the extent of 200 inches of water. In their second cause of action the plaintiffs allege that the Childs ranch is riparian to Digger Creek and that plaintiffs, as riparian owners of said lands, "are seized and possessed of the right and entitled to divert and use the

natural flow of said stream for the irrigation of said lands for the watering of stock and for domestic purposes''.

The third and fourth causes of action set forth in plaintiffs' amended complaint refer and relate to plaintiffs' right to the use of water flowing in Digger Creek upon the land acquired by them from M. L. Bouton, to which we have already referred. In the third cause of action plaintiffs allege a prescriptive right to take 37½ inches of water from said creek for use upon the lands acquired by them from said Bouton through the Bouton-Meeder or Bouton-Cofer ditch, which takes water out of Digger Creek above the lands of the defendant Walker for the irrigation of the Bouton and Walker ranches, said amount of 37½ inches of water being one-half of the amount of water flowing in said ditch. In their fourth cause of action plaintiffs set forth that the Bouton land is riparian to Digger Creek.

Defendant answered said amended complaint, and in her answer denied the allegations of the first and second causes of action set forth therein. As a separate defense she alleged the ownership by her and M. L. Bouton of lands riparian to Digger Creek, being the Bouton and Walker ranches already referred to; that they were the owners in common of the Bouton-Cofer ditch; and that for more than thirty years last past they and their predecessors in interest had diverted from Digger Creek for use upon their said lands 160 inches of water and used the same beneficially upon their said lands. Defendant claimed, and so alleged, that she was the owner of an undivided one-half of said ditch and one-half of the water flowing therein. In defendant's answer to the third and fourth causes of action of the amended complaint, she denied that 37½ inches of water constitute one-half of the water flowing in the Bouton-Cofer, or Bouton-Meeder ditch, and alleged that the same carried 160 inches of water; that she and her predecessors in interest had taken and used beneficially upon the Walker ranch one-half of said water, except when wrongfully prevented by the plaintiffs. She prayed that she be adjudged to be the owner of 80 inches of water flowing in said ditch for use upon her said lands; that her rights be adjudged to be prior to those of the plaintiffs and that her title thereto be quieted. Upon the issues as thus formed by the pleadings, the cause went to trial before the court without a jury. The court

made findings favorable to the plaintiffs, and upon those findings rendered judgment quieting plaintiffs' title to 119 inches of water of Digger Creek, continuous flow from the first day of June to the first day of October annually, for irrigation and domestic uses and for watering stock on the Childs ranch, and prorating the remainder of the water of Digger Creek between plaintiffs as the owners of Bouton ranch, and the defendant as the owner of the Walker ranch. From this judgment the defendant Walker has appealed. On this appeal the defendant makes no objection to that part of said judgment prorating the water in the creek between her and the plaintiffs, after the needs of the Childs ranch have been supplied. She does, however, attack the findings and judgment whereby the court found and awarded to the plaintiffs a prior right to 119 inches of water from said creek for use upon the Childs ranch, thus decreasing the amount of water in the creek to be prorated between her lands and those of the plaintiffs. The sole question presented on this appeal involves the judgment of the trial court quieting plaintiffs' title to 119 inches of water for use upon the Childs ranch.

The first contention of defendant is that the findings are inconsistent and conflicting and for that reason the judgment cannot stand. The court found that the plaintiffs and their predecessors in interest for more than thirty years had diverted through the Childs ditch and had used upon plaintiffs' lands for the purpose of growing alfalfa and other crops thereon, for domestic use and for watering stock, 200 inches of the waters of Digger Creek continuous flow measured under a four-inch pressure; that said diversion continued during the irrigating season of each year, to wit, from June 1st to October 1st; that the water so diverted constituted practically all the water flowing in said creek during the irrigating season in each year, merely permitting a small amount of water which leaked through the dam to flow down the creek to lands of the defendants; that said diversion was open and notorious and adverse to the rights of defendants and made under a claim of right to divert said amount of water from said creek, and that for more than twenty years plaintiffs and their predecessors had paid all state and county taxes assessed against said 200 inches of water. Following the findings of facts in detail as just noted, and ap-

parently as a succinct statement thereof, the court made a further finding (No. X) as follows: "That the plaintiffs have acquired a prescriptive right to, and are the owners of 119 inches of the waters of Digger creek, continuous flow, measured under a four-inch pressure, for the irrigation of 47.66 acres of the Childs ranch hereinbefore referred to and for domestic use and the watering of stock thereon, during the irrigating season of each year, to-wit: From June 1st to October 1st." The court further found in support of plaintiffs' riparian claim as alleged in their second cause of action, "that all of the said lands of plaintiffs above described are riparian to said stream" (Digger Creek) and "that plaintiffs, as the owners of said riparian lands, are seized and possessed of the right and entitled to divert and use the natural flow of said stream for irrigation of their said lands . . . for domestic purposes and watering of stock". It will thus be seen that the court found that the plaintiffs were the owners of 119 inches of water flowing in Digger Creek by prescription, and also that the plaintiffs as riparian owners on said creek were entitled to divert and use the natural flow of said creek for the irrigation of their riparian lands and for domestic purposes and watering stock.

The judgment of the court, entered upon the facts found, among other things held: "That the plaintiffs have acquired a prescriptive right to divert into and through said Childs Ditch 119 inches of the waters of Digger Creek, continuous flow, measured under a four-inch pressure from the 1st day of June, to the first day of October, annually, and the right to use the same for the irrigation of the Childs Ranch and for domestic use and the watering of stock thereon . . . and that the plaintiffs' title to the use of the waters of said creek, as hereinbefore set forth, be and the same is hereby quieted as against the claims of the defendants, or either of them." There is no mention in the judgment of plaintiffs' riparian rights, or of the findings of the court respecting said riparian rights. It is apparent, therefore, that the judgment of the trial court quieting plaintiffs' title to said 119 inches of water from Digger Creek is based solely upon the finding that the plaintiffs had acquired a right by prescription to the use of that quantity of water. Evidently the trial court disregarded its finding as to plaintiffs' riparian

right and, treating it as surplusage, placed its judgment solely upon the finding respecting plaintiffs' prescriptive rights. Under these circumstances we fail to see how any inconsistency in the findings in the respect just referred to can have any material bearing upon the validity of the judgment based entirely upon one of such findings. We may well follow the course pursued by the trial court and treat as surplusage the finding respecting plaintiffs' riparian rights.

The next contention of the defendant is that the finding of the trial court that plaintiffs have acquired a prescriptive right to 119 inches of water during the irrigating season of each year is not supported by the evidence.

Before entering upon a discussion of this phase of the case it might be well to state that during the trial it was stipulated that the lands of both plaintiffs and defendant are riparian and that the duty of water on all lands involved in this action is 2½ inches per acre under a four-inch pressure. It was further stipulated that plaintiffs' engineer and defendant's engineer should go over the lands and determine the areas susceptible to irrigation and the areas under irrigation and report to the court, leaving the court to determine the respective rights of said parties to the waters of said stream. The report of these engineers showed that there were under irrigation 47.66 acres of the Childs ranch, 28.34 acres of the Bouton ranch, and 12 acres of the Walker ranch. It also showed the following acreage susceptible to irrigation: Childs ranch, 71.12 acres; Bouton ranch, 80 acres, and Walker ranch, 123 acres, but only the following susceptible to profitable irrigation: Childs ranch, 47.66 acres; Bouton ranch, 74 acres, and Walker ranch, 40.6 acres. This report explains the findings of the court referred to above relative to the amount of water allotted to the Childs ranch. In these findings the court found that there had been used adversely for thirty years 200 inches of water upon the Childs ranch. The court, however, found that the plaintiffs had acquired a prescriptive right to only 119 inches of water. This quantity of water was determined by taking the number of acres of land in the Childs ranch which was at the time of the trial under irrigation, being 47.66 acres, and multiplying that number by 2½, in pursuance of the stipulation that the duty of water on said land was 2½ inches per acre. The amount thus obtained is in even numbers 119 inches, being

the amount of water allotted to the Childs ranch. All measurements of water given herein are stated in inches measured under a four-inch pressure.

The evidence as to the use of water from Digger Creek by the plaintiffs and their grantors and predecessors in interest upon the Childs ranch constitutes by far the greater part of all the testimony in this case. We will not attempt to give in detail the evidence of each witness who testified upon this subject. The father of the plaintiffs, S. M. Childs, purchased the property in 1887 and occupied it until the time of his death, which occurred a short time prior to the trial of this action. He purchased the ranch from a man named Herrick, who had lived on the property since 1872. At the time of said purchase there was a ditch leading from Digger Creek to the property purchased. This ditch was known as the Herrick ditch. It was enlarged in 1887 and 1888. Water was diverted from the creek into this ditch by means of a dam constructed in the creek. This dam and ditch have not been changed since 1888. Mr. Childs conducted a hotel, feed stable, and corrals for feeding stock on the way to the mountains. The ranch was chiefly seeded to clover, alfalfa and meadow grass and produced on an average of six tons of hay to the acre. He also had an orchard and raised considerable garden produce for the hotel. He also raised hogs and cattle and kept work stock. In 1893 or 1894 the last of the land cultivated by him was cleared, making the full acreage under cultivation and irrigation 47.66 acres. The soil is light loam, very porous, and slopes rather steeply toward the creek. All crops grown on said ranch were irrigated, and the method employed was to begin at the upper field and flood each field in succession until the field at the extreme lower end was irrigated. This required seven days. Then the water was turned in again at the upper field. The irrigating season was from about June 1st to October 1st of each year. During this entire period a continuous flow of water was used on the land. The Childs dam was constructed of rock and dirt, and its location has not been changed in forty years. The intake was constructed of 16 or 18 foot boards and has never been changed. A mark was maintained on the inside of the intake, and when the diversion was up to the mark the Childs ditch carried 207.8 inches of water. Two engineers made measurements

of water during the ownership of Mr. Childs and testified that in one instance 200 inches and in another instance 207.8 inches were flowing from the creek into the ditch. Beginning in the year 1908 and continuing down to the date of the trial in 1929, the Childs ditch and 200 inches of water flowing therein were separately assessed to Mr. Childs and his daughters and they paid the taxes thereon during said time. At the trial there was a sharp controversy as to the extent of the diversion of the water of said creek by means of the Childs dam and ditch—that is, whether all of the waters of said creek were so diverted, or whether after said diversion there remained in said creek sufficient water to meet the requirements of the defendant, and her predecessors in interest. Upon this issue the court found: "That during the months of June, July, August and September of each irrigating season, and during the period of more than thirty (30) years, as aforesaid, the plaintiffs and their grantors and their predecessors in interest have taken from Digger Creek and diverted into the said Childs Dam practically all of the water flowing therein, merely permitting such amount of water as leaked through a dirt and rock dam to go down the creek to the lands of defendants. That the said diversion of the said quantity of 200 inches of water by the plaintiffs, their grantors and predecessors in interest, was continuous, open and notorious and adverse to the rights of the defendants, and made under a claim of right to divert said amount of water even when it required all of the waters flowing in Digger Creek, at the Childs Dam so to do." The evidence, in our opinion, supports this finding of the court that substantially all of the water of the creek was diverted by means of the Childs dam and ditch during the irrigating seasons of the several years mentioned herein. The testimony of the two plaintiffs and their two brothers, G. L. and Frank P. Childs, all of whom were raised on the Childs ranch and were familiar with the conditions existing there during the lifetime of their father, and the testimony of L. H. Meyer, the husband of one of the plaintiffs, who was also intimately acquainted with the Childs ranch for a number of years prior to the trial, all tend to support the finding of the court that the Childs dam and ditch diverted practically all the water of the creek during the irrigating season. There is evidence to the contrary, and there may be slight inconsistencies in the

testimony of the five witnesses just referred to, but it was the duty of the trial court to weigh this evidence, and in doing so it resolved any contradictions or inconsistencies therein in favor of the plaintiffs. We are bound by its determination.

Turning now to the law of the case, we find certain principles of law well established.

The use of water upon riparian lands is presumed to be riparian, and the burden of proving prescriptive rights is upon the person asserting them. (*Pabst* v. *Finmand*, 190 Cal. 124 [211 Pac. 11]; *Coleman* v. *Le Franc*, 137 Cal. 214 [69 Pac. 1011]; *Oliver* v. *Robnett*, 190 Cal. 51 [210 Pac. 408]; *Scott* v. *Fruit Growers Supply Co.*, 202 Cal. 47 [258 Pac. 1095].)

"While one who asserts a prescriptive right to take water from a stream or other source must assume the burden of establishing it, proof of the continuous occupancy and use of the water as though he were the owner, for more than five years, establishes a *prima facie* case. It then devolves upon the original owner to show that the use of the water was permissive only or without his knowledge." (25 Cal. Jur., p. 1155; *Gurnsey* v. *Antelope Creek etc. Water Co.*, 6 Cal. App. 387, 392 [92 Pac. 326]; *Cheda* v. *Southern Pac. Co.*, 22 Cal. App. 373 [134 Pac. 717].)

"In appropriating the water which flows across his land, the lower appropriator invades no right of the upper riparian proprietor. The latter has no right of action to prevent such use, for he is in nowise injured, and the former should not be permitted to acquire a right in this manner which the latter is powerless to prevent. The case is quite different where the upper owner appropriates the water. The lower owner is injured at once and the law gives him a remedy, and, if he fails to avail himself of it, the appropriation may, by lapse of time, ripen into an absolute right." (*Bathgate* v. *Irvine*, 126 Cal. 135, 141 [58 Pac. 442, 444, 77 Am. St. Rep. 158]; *Pyramid Land etc. Co.* v. *Scott*, 51 Cal. App. 634, 638 [197 Pac. 398].) An upper riparian owner may gain a right by prescription as against the rights of the lower riparian owner by proof that the latter had actual notice of the adverse claim of the upper owner, or that the circumstances were such, as for instance the use of all the water of the

creek, that the lower owner must be presumed to have known of the adverse claim. (*Pabst* v. *Finmand, supra.*)

Assuming that the authorities cited above establish the law of this state upon the subject of prescriptive rights which may be gained by an upper riparian proprietor as against a lower owner to waters in the stream to which their lands are riparian, we are of the opinion that the evidence in this case is sufficient to support the finding of the trial court that the plaintiffs herein have acquired a prescriptive right to 119 inches of water in Digger Creek during the irrigating season of each year. While the burden is upon the plaintiffs to establish this right, we think that they have produced abundant proof of such right. There is practically no conflict in the evidence that they, and their predecessors in interest, used upon their lands continuously for a period of over thirty-four years substantially all the water of said creek flowing therein at the intake of the Childs ditch. The amount thus diverted was in the neighborhood of 200 inches of water measured under a four-inch pressure. The amount of the stream which was not so diverted was negligible and consisted only of the seepage through the Childs dam. The evidence is equally conclusive that the plaintiffs and their predecessors in interest made said diversion and used said amount of water upon their lands under a claim of right, openly, notoriously and adversely to the defendant and all lower owners on said stream; that the defendants and their predecessors in interest had actual knowledge of said diversion and of the adverse claim of plaintiffs and their predecessors in interest to the amount of water so diverted; and that plaintiffs and their predecessors in interest for more than twenty years, immediately prior to the commencement of the action paid all taxes assessed against said water so used by them as aforesaid. As against this evidence of the plaintiffs, the defendant Walker has made at best an indifferent showing. She and her grantors made but slight use of the land now owned by her. Only about twelve acres had any irrigation at all. The use of the water on these few acres was intermittent and comparatively slight. A considerable part of the time the land was occupied by the village blacksmith, who used the ranch more as a place of residence and made no attempt to cultivate any part of it, except that he irrigated a small garden patch and raised hay suffi-

cient for one cow. Prior to his occupancy the property was owned and occupied by a Mr. Meeder for eighteen years from 1892 to 1910, and there is no evidence that during this period of time any attempt was made to irrigate any part of it. At least on one occasion the occupant of the property was forced to go up the stream to procure sufficient drinking water for the use of those living on the property. The lands of the defendant adjoin those of the plaintiffs on the west. The dam by which water is diverted therein is situated only one-half mile below the Childs dam. This evidence is almost conclusive proof that the defendant and her predecessors in interest knew of the Childs' diversion and acquiesced therein. Having stood by for all these years and without protest or objection having acquiesced in the use of practically the entire flow of the stream by respondents during the irrigating season, the defendant must be held to have lost any right to the waters of said stream inconsistent with the beneficial use to which said waters were put by the plaintiffs during said period of time. (*E. Clemens Horst Co.* v. *Tarr Min. Co.*, 174 Cal. 430 [163 Pac. 492].)

There is one feature of the case referred to above which demands further mention. There is evidence to the effect that at intervals for some years prior to the commencement of this action, Bouton interfered with the Childs dam by removing the rocks therefrom and permitting the water to flow down the creek. Referring to one of such occasions he specified it as "the time Mr. Meyer caught us in 1917". His testimony that he frequently broke the dam is positively contradicted by G. L. Childs, a witness on behalf of the plaintiffs. It is evident that the trial court was not impressed with his evidence. It plainly shows that what he did toward the tearing out of the Childs dam was done secretly and surreptitiously and not openly under any claim of right so to do. Such an act would not break the continuity of the plaintiffs' use of said waters.

"Without further citation of authorities or a critical analysis of those already cited, it is clear that in order to interrupt the running of the statute of limitations as to flowing water, there must be an assumption of the possession thereof under a claim of right brought home to the adverse claimant either by express notice to that effect or by conduct so notorious and unequivocal as to imply such notice. . . .

'A clandestine entry or possession will not set the statute in motion, because the owner of the land cannot be said to have acquiesced in the wrongful entry or possession.' " (*Armstrong* v. *Payne*, 188 Cal. 585, 597 [206 Pac. 638, 643].)

The judgment is affirmed.

Preston, J., Shenk, J., Langdon, J., Seawell, J., Waste, C. J., and Thompson, J., concurred.

Rehearing denied.